[L. A. No. 19549. In Bank. June 26, 1946.]

BARRY SULLIVAN, Petitioner, v. THE STATE BAR OF
CALIFORNIA, Respondent.

Barry Sullivan, in pro. per., and John F. Poole for Petitioner.

Jerold E. Weil for Respondent.

THE COURT.—By writ of review, Barry Sullivan has challenged a recommendation of discipline by suspension from practice which was made by the Board of Governors of The State Bar after the adoption of the findings of fact of a local administrative committee.

The notice to show cause which initiated the proceeding charged Sullivan with violation of his oath and duties as an attorney within the meaning of section 6103, and with the commission of acts involving moral turpitude and dishonesty within the meaning of section 6106 of the Business and Professions Code. The acts specified in the notice concern his asserted failure to account for money and transfers of title to certain real property made for his benefit.

Following a hearing, the local committee made findings and conclusions and recommended suspension for three months. Later, the Board of Governors re-referred the matter to the committee and an amendment to the notice to show cause was issued. By the amendment, it was alleged that two appeals taken by Sullivan were frivolous, that he commenced an action for foreclosure of a lien without disclosing the receipt

by him of certain rentals from the property, and that the foreclosure suit was filed for the purpose of harassment. After a hearing upon the amended notice, the local committee made further findings and conclusions and recommended that Sullivan be suspended from practice for one year. The Board of Governors adopted the findings and amended findings, but recommended suspension for three months.

From the record of the proceeding it appears that, in 1939, Sullivan represented Charles Wellborn, who was the defendant in an action for annulment brought by Nada Wellborn. Judgment was in favor of the plaintiff; the marriage was annulled and she was awarded certain real property, subject to a lien in favor of Sullivan's client in the amount of $1,250. The court imposed no requirement upon her for the payment of this lien, nor did it fix any procedure for the enforcement of it.

Following entry of the decree, Sullivan obtained execution and levied upon the real estate. At the sheriff's sale it was bought by Wellborn for $1,000, and for the purpose of securing his fees and advances, Sullivan then had Wellborn execute to D. E. McGregor a grant deed conveying a one-fourth interest in the property.

Thereafter, Mrs. Wellborn unsuccessfully moved to quash the execution, vacate the levy and recall the sale. Upon an appeal, the order denying the motion was reversed. In its opinion the court said: "In this case, as there was no provision for a personal judgment or for enforcement of the lien, execution will not lie, and the motion to quash the writ of execution and to vacate the execution levy and sale should have been granted." (*Wellborn* v. *Wellborn*, 55 Cal.App.2d 516 [131 P.2d 48].)

While the appeal was pending, Wellborn conveyed the remainder of his interest in the land to McGregor. Admittedly, this transaction was for the benefit of Sullivan, he being the real party in interest. As consideration for the deed, Sullivan paid Wellborn $750 in cash and applied $250 upon his fee.

After the decision of the District Court of Appeal, and with full knowledge of its conclusions, Sullivan procured a deed executed by McGregor which conveyed to S. A. Sullivan the property which Wellborn had purchased at the execution sale. S. A. Sullivan, who was then in military service, is the nephew of Barry Sullivan. It is conceded that in the transfer of title made by this deed, Barry Sullivan was the real party

in interest. About 10 months later, the superior court made an order quashing the writ of execution and recalling the sale. In affirming it, the District Court of Appeal said: ". . . The appeal is frivolous and without doubt was taken for the purpose of delaying a trial on the merits. . . . Undoubtedly plaintiff has been sorely harassed by unfounded litigation, including the appeals in this and the companion case, but we think it is not incumbent upon this court to enter into an inquiry whether the attorney concerned, throughout the litigation, has observed the requirement of section 6068c of the Business & Professional Code [sic] which makes it the duty of an attorney 'To counsel or maintain such actions, proceedings or defenses only as appear to him legal or just, except the defense of a person charged with a public offense.' " (*Wellborn* v. *Wellborn,* 67 Cal.App.2d 545 [155 P.2d 99].)

For about two years following the issuance of the sheriff's deed, and continuing after the decision adjudging that the sale was invalid. Barry Sullivan collected rents from the property amounting to more than $1,400. He made no accounting for this sum. When certain tenants refused to pay him, he caused several actions in unlawful detainer to be filed in the justice's court in the names of McGregor, S. A. Sullivan and himself as plaintiffs.

Immediately after the superior court made its order quashing the execution sale in conformity with the decision of the District Court of Appeal, Mrs. Wellborn sued Barry Sullivan, McGregor, S. A. Sullivan and Charles Wellborn. The action was brought to quiet title, and for an accounting. Barry Sullivan appeared for himself and filed a disclaimer for McGregor. S. A. Sullivan did not appear and, although requested to do so, Barry Sullivan refused to divulge his whereabouts to Mrs. Wellborn's attorney.

In this suit, Mrs. Wellborn was granted a temporary injunction restraining the defendants from continuing the prosecution of the unlawful detainer action. The question as to the propriety of that order was then presented to the District Court of Appeal which declared: "The fact that Barry Sullivan has taken the present appeal, instead of going to trial in the superior court, and has thereby delayed the trial of the action on the merits is worthy of notice, in view of the fact that the injunction in question was issued under the equitable power of the court to try in a single action the issues involved in a multitude of actions at law, in order to put an

end to unnecessary and vexatious litigation. . . .'' Considering the merits of the appeal, the court also criticized Sullivan's action in defending Mrs. Wellborn's suit, saying: ''He had actual knowledge of the proceedings to vacate the execution and the sale; he and S. A. Sullivan and McGregor call themselves successors to Charles Wellborn in the ownership of the property but they . . . allege no facts in denial of plaintiff's title and none tending to prove that they had a right to the possession or to the income. They did not deny that the occupants of the premises were plaintiff's tenants; they alleged only that the same tenants had agreed to pay and had paid rent to them. From the affidavits it would appear that the defendants were claiming the right of possession and were collecting rents solely through the void execution sale to Charles Wellborn and without any right whatsoever. Upon the evidence which was before the court they appeared as mere interlopers who had been collecting rents from plaintiff's tenants and were seeking to oust them. If they had succeeded in their unlawful detainer actions they would have had judgment for possession as against the tenants without any adjudication of their right to possession as between themselves and plaintiff, Nada Wellborn. It appeared that the tenants were being harassed by groundless litigation, to their detriment and to that of plaintiff.'' (*Wellborn* v. *Wellborn*, 67 Cal.App. 2d 540, 543 [155 P.2d 95].)

After this decision, Barry Sullivan filed an action in the name of S. A. Sullivan to foreclose the lien given Wellborn by the decree of annulment. In this complaint it was alleged that Mrs. Wellborn had refused to pay the lien, and by reason of such refusal Charles Wellborn was ''forced'' to obtain an execution sale, which has been set aside; ''that a reasonable sum for costs of appeal to the said Charles Wellborn, due to the refusal of said defendant to honor said judgment is $250.00; that a reasonable charge for the litigation to enforce the order of the writ of execution and possession is $150.00; . . . That in addition to refusing to honor said judgment lien the defendant interfered with the occupancy of said premises after the sheriff's deed was recorded, thereby making further litigation and expenditures necessary; that a reasonable sum to be allowed therefor is $300.00.'' So far as the record in the present proceeding shows, this action is still pending.

The local administrative committee, at the conclusion of the first hearing, found ''that said conveyance from D. E. Mc-

Gregor to S. A. Sullivan was procured and caused to be made by respondent with knowledge of the decision of the District Court of Appeal, . . . and with knowledge of the fact that by virtue of said decision that neither respondent's client nor respondent's nominees, D. E. McGregor and S. A. Sullivan had or attained any real interest in the said property; and that the said conveyance was procured by respondent only for the purpose of clouding title to the said property and to hinder and delay the plaintiff in said action in her efforts to procure a clear title thereto.'' The conclusions drawn by the committee from the findings made upon these hearings were that Sullivan had violated his oath and duties as an attorney. It also declared that he had committed acts of moral turpitude and dishonesty. These were specified as the procuring of a deed to a person in the armed forces for the sole and exclusive purpose of clouding title and harassing and interfering with the owner of the property, and the taking of frivolous appeals for the purpose of harassing the respondents and unnecessarily and unjustifiably delaying trials upon the merits.

In challenging the recommendation of suspension, Sullivan contends: (1) The State Bar acted without and in excess of jurisdiction; (2) The findings of fact and recommendations are wholly without support in the evidence; and (3) The findings of fact do not show any violation of section 6103, 6067, 6068, or 6106 of the Business and Professions Code. Amplifying the first point, it is said that, as between Mrs. Wellborn and himself, he was acting in his individual capacity and not as her attorney, hence she may not complain of his conduct and The State Bar has no authority to discipline him. Sullivan also asserts: ''The State Bar has no jurisdiction to make an order under section 6106 of the Business and Professions Code without first having received a verified complaint'' as required by section 6108 of the code.

The position of The State Bar on the jurisdictional claim is that although Sullivan did not act as counsel for Mrs. Wellborn, he is an attorney and is bound by the requirements of section 6068(c) of the Business and Professions Code which includes, as a duty of one practicing law, ''To counsel or maintain such actions, proceedings or defenses only as appear to him legal or just, except the defense of a person charged with a public offense.'' Another duty relied upon is that specified in section 6068(g) as: ''Not to encourage either the

commencement or the continuance of an action or proceeding from any corrupt motive of passion or interest." Emphasis is also laid upon section 6106, which declares that, "The commission of any act involving moral turpitude, dishonesty or corruption, whether the act is committed in the course of his relations as an attorney or otherwise," is cause for disbarment or suspension. In answer to Sullivan's contention that an attorney may be disciplined only in a proceeding initiated by a verified complaint, The State Bar points out that there is no such requirement insofar as an investigation by that body is concerned. And the charges leveled at the findings are broadly justified upon the ground that the evidence clearly shows a general course on the part of Sullivan which was motivated by his own personal financial interest. The various legal proceedings taken by him, says The State Bar, were designed not only to harass Mrs. Wellborn but also to "delay and prevent an early and proper determination of her rights."

■ The attack upon the jurisdiction of The State Bar is entirely without merit. By statute, conduct involving moral turpitude, dishonesty or corruption, whether the act is committed in the course of an attorney's professional relations or otherwise, constitutes ground for discipline. (Bus. & Prof. Code, § 6106.) ■ And the "complete alternative and cumulative" procedure specified for the hearing by an administrative committee and the Board of Governors of charges against an attorney makes no mention of a verified complaint. (Bus. & Prof. Code, §§ 6076-6087.) That requirement applies only to a disciplinary proceeding commenced in a court. (Bus. & Prof. Code, § 6108.)

■ Considering the sufficiency of the evidence to support the findings of the Board of Governors, the fact that S. A. Sullivan is the petitioner's nephew, and, at the time the deed was executed, a member of this country's armed forces protected by the Soldiers and Sailors Civil Relief Act, provides the basis for an inference as to the reason for the conveyance to him. But the testimony concerning this transfer of title does not so clearly establish the purpose as being solely and exclusively to cloud title and harass Mrs. Wellborn as to amount to an act of moral turpitude and dishonesty within the meaning of the Business and Professions Code. ■ The act of an attorney which reasonably may be reconciled with the pursuit of a legal remedy invoked under a misconception of rights may not be characterized as one of those denounced

by the statute. Conduct falling below that of an ethical lawyer endeavoring to uphold the high principles of an honorable profession is not always ground for disciplinary action; to justify suspension or disbarment on recommendation of The State Bar, the act complained of must come clearly within the causes specified by the Legislature.

 Sullivan's reason for taking an appeal from the order quashing the writ of execution and setting aside the levy, as stated to the committee, was that he could not find his client but felt "responsible as attorney of record." In view of the fact that his nominee then held title to the property, his action is difficult to reconcile with right motives. On the other hand, if Sullivan honestly, although mistakenly, believed that the order should have contained some affirmance of his or Wellborn's right to the lien in its original amount, his action does not support a recommendation for discipline. The duty of an attorney includes a qualification which allows the exercise of professional opinion for the statute requires him "to counsel or maintain such actions, proceedings or defenses only as appear to him legal or just." (Bus. & Prof. Code, § 6068(c).)

 The finding of The State Bar in regard to the appeal from the order granting a preliminary injunction is also not supported by the evidence. Justification for the determination that it was frivolous and made for the purpose of delay is placed upon the ground that the chain of Sullivan's acts established his evil purpose, and good faith may not be inferred from them. But the appeal did not delay a determination of the ultimate rights of the parties, and one member of the local administrative committee declared that, in his opinion a substantial question of law was presented for decision.

 The complaint to foreclose the lien which was filed by Sullivan was not based, as the committee found, upon an asserted debt owed by Mrs. Wellborn. Foreclosure is the remedy which should have been invoked at the outset. So far as the demand for payment of the expenses of litigation is concerned, at the time the complaint was filed, Barry Sullivan may have believed that it was based upon legal principles. There is no evidence that he made these allegations with the knowledge that neither he nor his nominee was entitled to any recovery for the enumerated items. Very often the line between a fraudulent claim and one having slight, if any, legal foundation is difficult to draw but neither ignorance nor

incompetence is a ground for disciplinary action. The duty laid upon an attorney in regard to litigation has an important qualification.. It is: ''To counsel or maintain such actions, proceedings or defenses only as appear to him legal or just. . . .'' (Bus. & Prof. Code, § 6068(c).)

 In defense of his omission to state in the complaint that he had collected over $1,400 as rental from the property, Barry Sullivan told the committee that he does not know whether S. A. Sullivan or Wellborn owns the lien. In explanation of this statement, he expressed the opinion that, because the sheriff's sale had been vacated and the conveyance to Wellborn declared void, the deeds to S. A. Sullivan were ineffectual to convey title but possibly effected a transfer of the lien. He also said that as the right to the $1,400 was in issue in the action brought by Mrs. Wellborn, it was not a question for determination in the foreclosure suit. Unquestionably, the complaint for foreclosure might well have included some mention of the amount of rentals which had been collected. But the omission to state that fact may not be characterized as ''moral turpitude, dishonesty or corruption'' within the meaning of the State Bar Act.

The State Bar argues that Sullivan has failed to sustain the burden placed upon him to show wherein the decision of the board is erroneous or unlawful. It takes the position ''that the whole conduct of petitioner was directed at attempting, even after the first appeal which determined that the execution levy and sale should have been vacated, to hold and secure the fruits of the illegal sale, including the possession of the property and the collection of rents therefrom.'' But as he did only those things which the law allows, the record shows no basis for disciplinary action. Particularly in his own concerns, no attorney should engage in what the profession knows as ''sharp practice,'' nor do anything which does not measure up to those ethical standards which reasonably may be expected of members of the bar. However, discipline may be imposed only for an act which clearly comes within the conduct denounced by the State Bar Act as justifying that penalty.

The proceeding is dismissed.