[L.A. No. 32266. June 4, 1987.]

RUSSELL G. GREENBAUM, Petitioner, v.
THE STATE BAR OF CALIFORNIA, Respondent.

544

**COUNSEL**

Russell G. Greenbaum, in pro. per., for Petitioner.

Herbert M. Rosenthal, Truitt A. Richey, Jr., Richard J. Zanassi and Erica Tabachnick for Respondent.

OPINION

THE COURT.—The Review Department of the State Bar Court has recommended by an 11-to-2 vote that petitioner Russell G. Greenbaum, who was licensed to practice law in this state in 1968, be disbarred. The hearing panel had proposed the more lenient sanction of suspension and probation. Petitioner contends that the findings of the review department are not supported by the record, and that the discipline is excessive. We conclude, based upon our independent review of the record, that disbarment is appropriate.

## I.

### FACTS

### 1. The Leach Matter

In 1970, on petitioner's advice Mr. and Mrs. Leach gave petitioner $40,000 for deposit in an attorney's trust fund account. The money "was to be used strictly for the construction of their new home." Petitioner opened three separate trust accounts; two for $15,000 and one for $10,000. The passbooks remained in petitioner's possession and he was the only signatory on the accounts. Over the next several months, the Leaches authorized withdrawals totaling $30,000. In June 1971, the Leaches requested an additional $10,000 but were informed that no funds remained in the trust accounts. The Leaches requested and received an accounting, disclosing three withdrawals which were made "without their authorization, knowledge or consent." Petitioner admitted that he made the withdrawals but insisted that they were authorized.[1]

In 1976, the State Bar found that "without prior authorization, [petitioner] withdrew client funds, totalling $11,000 from trust accounts and appropriated them to his own use." Petitioner was placed on probation for four years on conditions which included three months' actual suspension.

### 2. Extension of Probation

In 1980 petitioner's probation was first revoked and then reinstated and continued for an additional two years, and additional sanctions imposed, because "he commingled with his personal funds $1,200 belonging to [one client] and $35 belonging to [another client]."

---

[1] Petitioner claimed that some of the money went to pay a portion of his legal fees and that $7,000 was a loan "to pay [petitioner's] taxes and other bills."

### 3. The Nish Matter

On January 8, 1977, Sarah Nish met with petitioner; her husband, Walter Nish, had died the day before and she wished legal advice. Also present at the meeting was Walter's son, William Nish, the executor of Walter's estate. Petitioner was retained to represent Sarah (individually) and William (as executor of the estate). Pursuant to petitioner's instructions, they transferred nearly $33,000 to him. Following the funeral on January 11, William returned to his home in Georgia, relying upon petitioner to settle the estate.

Almost one year later, William received a letter from petitioner which stated, in part, "I am in the process of preparing an accounting which will include distribution of all funds which I had on deposit or expect to receive . . . ." Six months later, William telephoned petitioner and inquired about the final accounting; petitioner responded that it was being completed but would take more time.

In September 1978 petitioner again wrote William. He requested 3 checks, totaling nearly $3,000, to cover certain costs. William again contacted petitioner, who explained that, although he did have funds from the January 1977 transfers, Sarah had withdrawn $7,500 from the account. Petitioner also explained that the costs detailed in his letter should be paid by the executor of the estate. William complied.

In December 1978 William wrote petitioner and requested an accounting and an explanation for certain expenditures. He received no response and no accounting. William wrote petitioner again in July 1979 and again requested the final accounting. Petitioner replied the following month, saying that he was preparing the final accounting but that he was "having some difficulty in identifying specific withdrawals due to the fact that the secretary-accountant who made certain entries did not sufficiently indicate what the deductions were for." The letter concluded, "payment of administrative fees, outside accounting services, petition preparations, statutory attorney's fees, and other necessary expenditures on behalf of the estate *have used most, if not all, of the funds on deposit.* This accounting will be forwarded when completed." (Italics added.) No accounting was forthcoming.

William immediately wrote petitioner again and requested that the accounting encompass *all* funds received and spent. Petitioner replied one month later, saying that all relevant documents had been turned over to Harold Hancock, a certified public accountant (CPA), and that the complete records would be sent to William "as soon as possible." Again, no accounting was forthcoming.

In May 1980 William again wrote petitioner, complaining of the delays and requesting an accounting. In July, after receiving no response, William telephoned Hancock, who informed William that the accounting had been completed and promised to forward a copy. William telephoned Hancock again in August because he had not received the accounting. Hancock said he was surprised because, following their previous conversation, he telephoned petitioner who promised to send William the accounting immediately. Hancock then told William he would send him the accounting. Still no accounting was forthcoming.

Finally, William consulted an attorney in Georgia. In December 1980 the attorney wrote petitioner and demanded an accounting. She added, "I have advised Mr. Nish that if you have not communicated with me within two weeks from the receipt of this letter then he should take appropriate action, to-wit: either by procuring an attorney to determine whether or not legal action should be taken against you or by taking the matter up with the California State Bar Association." Petitioner telephoned William's attorney and told her that William must be confused because no such accounting existed. The attorney advised William to file a formal complaint with the California State Bar, which he did in January 1981.

The State Bar charged petitioner with violating rule 8-101 of the Rules of Professional Conduct (commingling) and section 6106 of the Business and Professions Code (willful misappropriation).

In November 1985 William testified before the State Bar Court. He presented the facts set forth above, and added that, as of the present date, he had not received an accounting and had not received any of the money he had given petitioner in January 1977.

Sarah's daughter, Maria Annette Baxter (Ann), also testified before the State Bar Court. (Sarah had passed away prior to the commencement of hearings.) Ann testified that she had assisted Sarah in her financial matters and was thus aware of all of Sarah's financial transactions with petitioner. She testified that Sarah received $1,000 from petitioner on January 17, 1977, an additional $1,000 on January 28, 1977, and another $1,000 on June 24, 1977. Ann also testified that petitioner gave Sarah a check for $2,000 so that Sarah could lend the money to Ann. Finally, according to Ann, petitioner paid the $750 balance due on new hearing aids for Ann. Thus, the total amount Sarah received from petitioner was $5,750.

Petitioner testified before the State Bar Court and admitted receiving $32,808.79 from the Nishes. He claimed that he had possessed a ledger card which detailed what happened to this money, and that he allowed an investi-

gator from the State Bar to copy the ledger card in 1981. According to petitioner, the investigator returned the original, but petitioner could no longer find that original or a copy. Nonetheless, petitioner presented a document, which he had compiled a few days earlier, purporting to explain where the money went. Specifically, petitioner alleged he had disbursed $3,750 to Sarah, $4,000 to Ann, and $7,692.28 to William; he had no record of Sarah withdrawing $7,500 from the account. Petitioner also claimed that he thought William had received a final accounting, and testified that he himself had never received a copy of Hancock's accounting.

Petitioner continued his testimony before the State Bar Court in January 1986. At that time, he admitted that the $7,692.28 he claimed went to William had actually been deposited into petitioner's general account in August 1977, but petitioner denied using the funds for personal purposes.

The hearing panel, believing the key issue to be whether petitioner failed or refused to provide William with an accounting of the client trust funds, concluded that such an accounting was never provided. The hearing panel also determined that petitioner commingled funds in violation of rule 8-101, but did not find willful misappropriation. The State Bar hearing examiner urged the panel to recommend that petitioner be disbarred. The examiner based her request on standard 1.7 of the new Standards for Attorney Sanctions for Professional Misconduct (eff. Jan. 1, 1986), which provides that if an attorney has been disciplined on two prior occasions then disbarment is appropriate unless "the most compelling mitigating circumstances clearly predominate."[2] The hearing panel recommended that petitioner be suspended from practicing law for three years, with certain conditions including one year of actual suspension.

The State Bar examiner sought review of the hearing panel's decision "on the grounds that the discipline imposed is insufficient and that the Findings of Fact do not accurately reflect the record in this matter." Petitioner also sought review, arguing that the State Bar should be precluded from prosecuting him because it did not act diligently, and challenging the sufficiency of the evidence to support the findings and the discipline imposed. Petitioner

---

[2] Standard 1.7(b), provides that "If a member is found culpable of professional misconduct in any proceeding in which discipline may be imposed and the member has a record of two prior impositions of discipline as defined by Standard 1.2(f), the degree of discipline in the current proceeding shall be disbarment unless the most compelling mitigating circumstances clearly predominate."

Standard 1.2(f), provides that " 'Prior record of discipline' is a previous imposition or recommendation or discipline of the member as defined by rule 571, Rules of Procedure of the State Bar. *It includes discipline imposed for a member's violation of probation* or violation of an order of the Supreme Court requiring compliance with rule 955, California Rules of Court." (Italics added.)

further urged that our prior ruling, in an unrelated case, that petitioner had complied with the terms of his probation precluded the State Bar from charging otherwise.

The review department recommended the greater sanction of disbarment because "[petitioner] has a severe record of prior discipline involving his failure to properly manage trust accounts and trust funds, even while on probation; and that, *inter alia,* Standard 1.7(b) of the State Bar's Standards for Attorney Sanctions for Professional Misconduct . . . calls for disbarment in this matter."

## II.

### DISCUSSION

Petitioner seeks review on three grounds: estoppel, sufficiency of the evidence, and excessive punishment.

As to the issue of estoppel, petitioner notes that the Nish complaint was filed in 1977. But, he asserts, the review department had previously concluded that petitioner complied with his probation conditions from January 26, 1976, through May 15, 1979. He argues that his records had been examined at least three times prior to 1979 and that "there has never been an unexplained shortage, conversion, or misappropriation of client funds, including those alleged in the claims of the current complaining witness." In essence, his argument is that the CPA certifications, acknowledged by the State Bar, should be given res judicata effect as to the issues of commingling and misappropriation because "said certifications show that all client funds were accounted for and all disbursements set forth prior to deposit of client funds into [petitioner's] general account."

■ We summarily reject the argument that res judicata is somehow applicable. The conditions of petitioner's probation required that a CPA review his accounts quarterly; in no way did such review insulate petitioner from future claims that he had misappropriated or commingled funds without the CPA detecting such misconduct. We therefore turn to the sufficiency of the evidence claim.

■ It is well settled that we must independently examine the evidence and pass on its sufficiency in attorney discipline matters and that we must resolve all reasonable doubts in favor of the attorney. (*Alberton* v. *State Bar* (1984) 37 Cal.3d 1, 11 [206 Cal.Rptr. 373, 686 P.2d 1177].) The findings of the hearing panel, however, are entitled to great weight, and the burden lies with petitioner to show that the State Bar's findings are not supported

by the evidence. (*Id.* at p. 12.) "In meeting this burden, the petitioner must demonstrate that the charges of unprofessional conduct are not sustained by convincing proof and to a reasonable certainty." (*Himmel* v. *State Bar* (1971) 4 Cal.3d 786, 794, [94 Cal.Rptr. 825, 484 P.2d 993], citations omitted.) In this case, petitioner has not met that burden.

■ Petitioner's sufficiency of the evidence claim is based on an allegation of contradictory evidence. He claims that the Nish complaint is contradicted by CPA certifications and accounting reports, and by William's testimony. However, petitioner provides no concrete examples or specific record citations to substantiate his claim, and our reading of the record fails to disclose such evidence. In any event, we seldom disturb the hearing panel's resolution of conflicting testimony because the panel "has the opportunity to observe first-hand the demeanor of the witnesses and can better evaluate the veracity of their testimony." (*Baranowski* v. *State Bar* (1979) 24 Cal.3d 153, 162 [154 Cal.Rptr. 752, 593 P.2d 613].) Both the hearing panel and the Review Department found that petitioner commingled the Nishes' funds with his own by placing them in his general account.

Moreover, the State Bar Court's findings are presumed to be supported by the evidence. (Bus. & Prof. Code, § 6083, subd. (c).) Petitioner has failed to rebut that presumption. It is undisputed that $7,692.28 of the Nishes' money, which petitioner placed into his general account, has not been returned to them. To this day, petitioner has been unable to explain where the money went. In light of the evidence presented before the State Bar Court, we believe it is a reasonable inference that petitioner commingled these funds with his own. Accordingly, we reject petitioner's challenge to the sufficiency of the evidence.

Petitioner's final contention is that the recommended discipline "is completely unwarranted and is not specifically mandated by the attorney disciplinary sanctions now in effect." ■ At the outset, we observe that the Standards for Attorney Sanctions for Professional Misconduct are simply guidelines for use by the State Bar. Whether the recommended discipline is appropriate is still a matter for our independent review. Moreover, there is nothing akin to an ex post facto problem in the review department's recommended discipline, even though it was based in part on new standard 1.7, which did not become "effective" until January 1, 1986. ■ "The ex post facto clauses [of the federal and California Constitutions] apply only to penal statutes." (*Conservatorship of Hofferber* (1980) 28 Cal.3d 161, 180 [167 Cal.Rptr. 854, 616 P.2d 836].) And our past cases make it clear that "the primary purpose of [attorney] discipline is the protection of the public, the profession and the courts rather than the punishment of the attorney." (*In re Severo* (1986) 41 Cal.3d 493, 500 [224 Cal.Rptr. 106, 714 P.2d 1244], citations omitted;

see also *In re Chira* (1986) 42 Cal.3d 904, 909 [231 Cal.Rptr. 560, 727 P.2d 753].) The sole issue before us is whether the recommended discipline is appropriate.

■ Our independent review of the record convinces us that disbarment is appropriate. This is petitioner's third disciplinary proceeding involving commingling and/or willful misappropriation of client trust funds. In the Leach matter, petitioner commingled and misappropriated $11,000. He was disciplined and placed on probation. But *even while on probation,* petitioner continued to commingle client trust funds. He commingled more than $1,000, leading to revocation and extension of his probation.

In the Nish matter, again *while still on probation,* petitioner commingled thousands of dollars and repeatedly refused to provide an accounting. These funds are still unaccounted for. We do not believe petitioner's assertion that these funds were legitimately spent. Nor are we persuaded that petitioner's switch to a "primarily business law practice" will solve the problem of his continual misconduct. In light of petitioner's prior and perpetual misconduct, and in light of the severity of the instant offense, we conclude that petitioner should be disbarred. It is therefore ordered that petitioner be disbarred, that his name be stricken from the roll of attorneys, that he comply with rule 955 of the California Rules of Court and that he take the actions specified in subdivisions (a) and (c) of that rule within 30 and 40 days, respectively, after the effective date of this order. This order is effective 30 days after the modification to this opinion is filed.

Petitioner's application for a rehearing was denied July 16, 1987, and the judgment was modified to read as printed above.