[No. S001679. Jan. 11, 1988.]

WALTER L. MARQUETTE, Petitioner, v.
THE STATE BAR OF CALIFORNIA, Respondent.

COUNSEL

Walter L. Marquette, in pro. per., for Petitioner.

Herbert M. Rosenthal, Truitt A. Richey, Jr., and Andrea Wachter for Respondent.

OPINION

**THE COURT.\***—The Review Department of the State Bar Court has recommended unanimously that petitioner Walter L. Marquette be disbarred from the practice of law in the State of California. (Bus. & Prof. Code, § 6100; Cal. Rules of Court, rule 951.) The recommendation follows the findings of the hearing panel that petitioner (1) perjured himself on a lease application and willfully executed drafts for rental payments against insufficient funds; (2) willfully violated a court order to appear at a debtor's examination; and (3) misappropriated disputed client funds for his personal use and threatened criminal charges to gain advantage in a related civil dispute. In determining the appropriate discipline for these transgressions, the review department considered petitioner's two previous reprovals for professional misconduct.

Appearing in propria persona, petitioner contends, without authority and with essentially no citation to the record, that the hearing panel and the review department committed various errors of fact and law. Our independent review of the record reveals no basis for his assertions. We conclude that he should be disbarred.

## I. FACTS

### A. The 1975 Private Reproval

Petitioner was admitted to the practice of law in 1971. In April 1972, Larry P. retained him to assist in obtaining a discharge from the United States Navy. Petitioner accepted $2,500 to process the discharge application and to exhaust all available remedies if initially unsuccessful. Petitioner filed an application for discharge and attended a hearing in the matter, but thereafter took no further action. Although Larry P. tried repeatedly to

---

\*Before Lucas, C. J., Mosk, J., Broussard, J., Panelli, J., Arguelles, J., Eagleson, J., and Benson (John E.), J.†

†Associate Justice, Court of Appeal, First Appellate District, Division Two, assigned by the Chairperson of the Judicial Council.

contact petitioner, he failed to return his client's telephone calls and letters. Larry P. did not obtain a discharge and eventually completed his term of service.

The hearing panel determined that petitioner had willfully failed to perform duties for which he had been retained. He was privately reproved by the Disciplinary Board of the State Bar.

### B. *The 1978 Public Reproval*

In April 1974, petitioner agreed to defend Charlotte N. in a criminal prosecution. Petitioner advised his client that he would appear on her behalf at a pretrial conference scheduled for May 1, 1974, and that she need not attend. Petitioner did not appear at the conference, and the court issued a bench warrant for Charlotte N.'s arrest. Two weeks later petitioner met with her in his office and clearly implied that he had appeared at the pretrial conference. After the meeting she repeatedly attempted to contact petitioner, but he did not return her telephone calls. She never spoke with him again.

In March 1974, petitioner agreed to represent Elsie S. Andersen in a dispute with the General Motors Corporation. Andersen subsequently paid petitioner $500 for his legal services. Andersen repeatedly attempted to contact petitioner thereafter, but received no response. Petitioner performed no legal services and retained the $500 paid to him for representation.

The hearing panel determined that in both the Charlotte N. and Andersen matters petitioner had willfully failed to perform legal services for which he was retained, and had intentionally abandoned his client. On April 7, 1978, the Disciplinary Board of the State Bar publicly reproved petitioner for his professional misconduct.

### C. *The Current Proceeding*

The hearing panel made findings with respect to three separate incidents of alleged professional misconduct. The Review Department of the State Bar Court adopted the hearing panel's determinations in their entirety. They establish the following:

#### *The Lee Matter*

In March 1981, petitioner executed a lease application under penalty of perjury for a large home in Carmel Valley owned by Edwin Lee. Petitioner asserted in the application that his former landlord was named Matthew Cervelli, and that he had left his previous rented residence because the lease

had expired. Petitioner also claimed that he had never been evicted, and that he had never willfully and intentionally refused to pay rent when due. Lee contacted Cervelli, who stated that petitioner was an excellent tenant who timely paid his rent.

Cervelli was not petitioner's prior landlord, however, but a close friend. The actual owner of petitioner's prior leased property was Angelo Taddeo. Petitioner had repeatedly failed to pay rent to Taddeo, who served petitioner in January 1981 with a three-day notice to pay $2,000 in rent due or quit the premises. Petitioner entered into a compromise involving the payment to Taddeo of a certain sum of cash, the execution of a promissory note for the balance of outstanding rent, and the surrender of the premises after a limited extension of his tenancy.

On the basis of the false representations made in the lease application, Lee rented petitioner his residential property. On five separate occasions in 1982 and 1983, petitioner knowingly executed checks to Lee for rent due against insufficient funds. The checks were dishonored, but subsequently paid.

### The Taddeo Matter

Taddeo brought suit against petitioner after he made no payments on the promissory note executed as part of the compromise for unpaid rent. He obtained a judgment in the amount of $2,100 plus attorney fees, costs, and interest. After petitioner failed to pay the judgment, he was personally served with notice to appear at a debtor's examination. Petitioner did not appear and was held in contempt. Petitioner never satisfied the judgment.

### The Thelma J. Matter

During 1982 petitioner represented Rickye K. in a federal criminal trial. Rickye K. was convicted and imprisoned. In petitioner's presence, Thelma J., the fiancée of Rickye K., delivered a cashier's check in the amount of $2,750 to Joseph Cassignelli, a court reporter, as a deposit for preparation of the trial transcript required for Rickye K.'s appeal. Petitioner assured Thelma J. that any unused portion of the deposit would be refunded to her. In April 1983 Cassignelli delivered a check made out to petitioner in the amount of $1,350 as a partial refund of the transcript deposit.

Petitioner called Rickye K. in prison. He told Rickye K. that he intended to deposit the check in his personal bank account and apply the sum to the balance owed him for Rickye K.'s representation. As petitioner stated before the hearing panel, "I said, I'm going to take this check, it's made payable to me, and I'm going to cash this check and apply it to what you

owe me, because I understand, as you told me, it was money that you put up. He didn't say anything about it being Thelma [J.'s] check. He said well, buddy, I'm in jail, there's not much I can do about it."

Thelma J. informed petitioner that the money belonged to her and demanded that he return the refund. Petitioner refused, and has never reimbursed her. On at least one occasion petitioner stated to Thelma J. that if she persisted in her attempt to recover the money, he would "go to the Attorney General" and implicate her in matters for which Rickye K. had been prosecuted.

### Conclusions

On the basis of these findings, the State Bar concluded that petitioner committed various acts of professional misconduct. Specifically, the State Bar determined that (1) petitioner's perjured statements on the lease application and his intentional execution of drafts against insufficient funds were acts of moral turpitude in violation of Business and Professions Code section 6106;[1] (2) his failure to appear at the noticed debtor's examination was a breach of his oath to uphold the Constitution and laws and to maintain respect for the judiciary, in violation of sections 6106 and 6068, subdivisions (a) and (b); and (3) his misappropriation of the transcript refund check was an act of moral turpitude in violation of section 6106, and his threat to initiate criminal charges against Thelma J. constituted an improper attempt to gain advantage in a civil matter in violation of rule 7-104 of the State Bar Rules of Professional Conduct.

The State Bar also found multiple matters in aggravation. Petitioner had been disciplined twice previously for professional misconduct. He exhibited no remorse for the hardship caused others by his misdeeds, and asserted that all his acts were justified by personal and financial difficulties. Finally, petitioner was found to be "hostile to the State Bar and the conduct of this proceeding." Disbarment was accordingly recommended.

### II. DISCUSSION

█ It is settled that we must independently examine the evidence and evaluate its sufficiency in matters concerning the discipline of an attorney. (*Alberton* v. *State Bar* (1984) 37 Cal.3d 1, 11 [206 Cal.Rptr. 373, 686 P.2d 1177].) All reasonable doubts must be resolved in favor of the attorney. (*Ibid.*) However, the findings of the hearing panel are entitled to great weight. (*Greenbaum* v. *State Bar* (1987) 43 Cal.3d 543, 549 [237 Cal.Rptr.

---

[1] All subsequent statutory citations are to the Business and Professions Code unless otherwise noted.

168, 736 P.2d 754].) When the findings rest primarily on testimonial evidence, " 'we are reluctant to reverse the decision of the [hearing panel], which was in a better position to evaluate conflicting statements after observing the demeanor of the witnesses and· the character of their testimony.' " (*Himmel* v. *State Bar* (1971) 4 Cal.3d 786, 794 [94 Cal.Rptr. 825, 484 P.2d 993].)

▪ It is also settled that petitioner bears the burden of demonstrating that the findings are not supported by the evidence. (*In re Chira* (1986) 42 Cal.3d 904, 908 [231 Cal.Rptr. 560, 727 P.2d 753].) "In meeting this burden, the petitioner must demonstrate that the charges of unprofessional conduct are not sustained by convincing proof and to a reasonable certainty." (*Himmel* v. *State Bar, supra,* 4 Cal.3d at p. 794 [94 Cal.Rptr. 825, 484 P.2d 993].)

In a petition that he concededly prepared in only a few hours, petitioner offers several unsubstantiated objections to the determinations of the State Bar. He cites no authority for any legal proposition, and makes but two references to the record of proceedings before the hearing panel. After independently examining the record to determine whether any basis exists for his allegations, we conclude that petitioner has failed to carry his burden. With one exception, the State Bar's determinations must be sustained.

Petitioner first alleges that the hearing panel's findings are pervasively flawed because the principal referee was prejudiced against him, "although he may not have known so. His body language, his attitude, his rulings, his tone of voice, his stated prejudgments, and his decision all reflect his bias against Petitioner." Our review of the record reveals that the referee was scrupulously attentive and evenhanded in his conduct of the proceeding. For example, the referee freely granted petitioner continuances for alleged personal difficulties, carefully considered his objections, and allowed him to present testimony, at length, on matters clearly tangential to the inquiry. His conduct of the proceeding was patient, fair, and commendable.

Petitioner next contends that the referee erred in failing to provide him appointed counsel, given his mental and physical ailments. Petitioner claims that the referee should have "grasp[ed] and remed[ied] sua sponte this disability." Our review of the record fails to disclose any request by the petitioner for assistance, nor any statement informing the referee of an ongoing disability. Furthermore, while petitioner's defense was unquestionably weak on its merits, the record demonstrates that he was lucid, examined witnesses, and offered various objections throughout the course of the hearing. Our review reveals no evidence that petitioner was mentally or physically impaired at the time of the proceeding. (See Rules Proc. of State Bar, rule 351.)

■ Petitioner contends that the State Bar erred repeatedly in its determinations with respect to the Lee matter. He first argues that at the time he submitted the lease application to Lee, he had never been evicted or intentionally failed to pay rent. He thus asserts that his representations to that effect on the lease application were truthful, contrary to the finding of the hearing panel. The argument strains credulity. Petitioner does not dispute that he failed to pay his previous landlord over $2,000 in rent, and left his former residence pursuant to the compromise of an eviction proceeding. Although it may be true, as petitioner alleges, that he wished to satisfy his obligations to Taddeo but simply could not, his purported good faith does not alter the fact that he knowingly failed to pay rent and ultimately left the premises as a direct result of that failure. His concealment of these facts amounted to a willful attempt to deceive Lee.

Petitioner next contends that his concededly untruthful statement regarding the name of his former landlord was not "material," because he otherwise had impeccable credentials and was fully capable of paying rent. The argument is specious. Petitioner's misrepresentation regarding the name of his former landlord was an obvious attempt to deceitfully induce Lee into contracting with him by concealing his past inability to timely satisfy rental obligations. The concealment was unquestionably material insofar as it "relat[ed] to a matter of substance and directly affect[ed] the purpose of the party deceived in entering into [the] contract." (*Thomas* v. *Hawkins* (1950) 96 Cal.App.2d 377, 379 [215 P.2d 495].) Petitioner's subsequent execution of five drafts for rent due against insufficient funds during 1982 and 1983 belies his assertion that the misrepresentation did not conceal information material to Lee's contractual assent.

■ Petitioner finally contends that the State Bar lacked jurisdiction to inquire into the Lee matter because it did not relate to an issue bearing on the conduct of an attorney-client relationship. Again, petitioner's argument is without merit. Section 6106 states that "The commission of any act involving moral turpitude, dishonesty or corruption, *whether the act is committed in the course of his relations as an attorney or otherwise,* and whether the act is a felony or misdemeanor or not, constitutes a cause for disbarment or suspension." (Italics added.) Petitioner's perjured representations on the lease application fall squarely within the reach of this language and are an appropriate subject for disciplinary consideration. (*Sullivan* v. *State Bar* (1946) 28 Cal.2d 488, 494 [170 P.2d 888], disapproved on another point in *Stratmore* v. *State Bar* (1975) 14 Cal.3d 887, 890 [123 Cal.Rptr. 101, 538 P.2d 229, 92 A.L.R.3d 803].) ■ We accordingly conclude that petitioner committed an act of moral turpitude and professional misconduct under section 6106 by perjuring himself on the lease application.

Petitioner does not dispute the separate finding that he executed five checks to Lee against insufficient funds during 1982 and 1983. In fact, his testimony revealed that virtually every check he wrote during the period was executed against insufficient funds, although subsequently honored. This conduct also involves moral turpitude insofar as it evinces "an abiding disregard of ' "the fundamental rule of ethics—that of common honesty—without which the profession is worse than valueless in the place it holds in the administration of justice." ' " (*Tomlinson* v. *State Bar* (1975) 13 Cal.3d 567, 577 [119 Cal.Rptr. 335, 531 P.2d 1119]; see *Hamilton* v. *State Bar* (1979) 23 Cal.3d 868, 876 [153 Cal.Rptr. 602, 591 P.2d 1254].)

■ Turning to the Taddeo matter, petitioner asserts that the hearing panel erred in finding that he "willfully and without just cause failed and refused to appear" at the debtor's examination. He argues that his failure to appear was actually caused by an extreme illness which forced him to literally remain on the floor of his home for months, and led to the loss of his teeth and hair. Petitioner declines to explain why he did not at least notify the court of his condition prior to the examination, or how he could have appeared at a hearing two weeks later in an unsuccessful attempt to explain his earlier nonappearance and avert a contempt citation. However, we need not reach the merits of his contention to conclude that the determination of the State Bar was nonetheless in error. Even if we presume that petitioner's nonappearance was unexcused by illness, his behavior in this instance still did not constitute professional misconduct.

The State Bar determined that petitioner's nonappearance was an act of moral turpitude in violation of section 6106 and also violated his professional oath to uphold the Constitution and laws and to maintain respect for the judiciary under section 6068, subdivisions (a) and (b). The State Bar concedes that petitioner, acting as a private litigant in the Taddeo matter, did not violate section 6103, which deems punishable "A wilful disobedience or violation of an order of the court" if an attorney does so in "connect[ion] with or in the course of his profession." As we recently observed, "Not every act of disobedience which would violate section 6103 if committed while acting as a lawyer also constitutes a violation of [sections 6106 and 6068, subdivisions (a) and (b)] when committed by an attorney in his private capacity. Otherwise section 6103's phrase 'acts connected with or in the course of his profession' would be superfluous. But serious and fundamental obstructions of the judicial system the member has sworn to uphold, committed willfully and in bad faith, suggest a lapse of character and a disrespect for the legal system which bear directly on the attorney's fitness to practice law." (*Maltaman* v. *State Bar* (1987) 43 Cal.3d 924, 951 [239 Cal.Rptr. 687, 741 P.2d 185].)

In *Maltaman,* we found that repeated disobedience of court orders by an attorney in his private capacity constituted a "serious and fundamental obstruction[ ]" where the behavior "produced no mere minor inconvenience in the litigation process. Rather, the predictable effect of his disobedience was to delay by years the possession of property of significant value by its rightful owners." (*Ibid.*) Here, petitioner's single act of noncompliance resulted only in the continuation of the debtor's examination for two weeks. Even if unexcused, this disobedience was not sufficiently serious or fundamental to constitute a violation of sections 6106 and 6068.

Petitioner contends in conclusion that the State Bar erred variously in its findings with respect to the Thelma J. matter. He first claims that the hearing panel believed perjured testimony on the part of Thelma J. He asserts that he never threatened to inform the Attorney General of damaging information if she persisted in her attempt to recover the refund payment, and that she lied on the stand with regard to their communications. While the record reveals a clear conflict between the testimony of Thelma J. and that of petitioner, there is no evidence that her testimony was impeachable or untruthful. The hearing panel's favorable assessment of her version of the events was dependent on an evaluation of " 'the demeanor of the witnesses and the character of their testimony,' " and thus is not susceptible to meaningful review. (*Himmel* v. *State Bar, supra,* 4 Cal.3d at p. 794 [94 Cal.Rptr. 825, 484 P.2d 993].) Accordingly, we sustain the finding.

Petitioner next contends that the hearing panel committed two procedural errors regarding the Thelma J. matter. First, he alleges that it was error to admit into evidence a deposition of Rickye K. taken by the State Bar in Oklahoma, where he is incarcerated, because petitioner could not afford to appear. But as the record demonstrates, petitioner was given timely notice of the deposition and made no objection to its conduct nor requested any accommodation on the part of the State Bar. (Code Civ. Proc., § 2016, subd. (e); Rules Proc. of State Bar, rule 315.) His objection to its introduction at the hearing thus was not timely.

■ Petitioner's second procedural objection is that the hearing panel erroneously allowed the State Bar to amend its notice to show cause to include the charge that petitioner threatened Thelma J. with a criminal prosecution if she continued to press her claim to the transcript refund check. The hearing panel allowed the amendment after Thelma J. disclosed the alleged threat on the initial day of her testimony. Petitioner contends that the amendment was untimely, prejudicial, and denied him due process.

Rule 557 of the Rules of Procedure of the State Bar states that "The hearing panel . . . may require or allow amendments to the pleadings. The notice to show cause may be amended to conform to proof, or to set forth

additional facts constituting an additional alleged violation or violations, or an additional ground or grounds for the action proposed, whether occurring before or after the commencement of the formal hearing. [¶] . . . [T]he member is entitled to a reasonable time to answer the amendment and prepare his defense thereto." Thelma J. made the allegation during the hearing conducted on August 12, 1986. The State Bar amended the notice to show cause on August 19, 1986. Petitioner was given until August 25, 1986, to file a responsive pleading, and until September 22, 1986, to prepare for additional examination of Thelma J. The hearing panel subsequently continued the September 22 hearing date to October 2, 1986, to accommodate petitioner. He thus was given ample time to respond to the additional allegations and prepare his defense. The objection is meritless.

■ Petitioner does not dispute that he deposited the refund check into his personal bank account without notifying Thelma J., or that he presented the deposit as a fait accompli to Rickye K. during a telephone conversation. Petitioner justifies this behavior on the basis of his understanding that the money belonged to Rickye K., who had not fully paid him for his services. This understanding was based on Rickye K.'s previous statement to the petitioner that he planned to pay for the transcript through Thelma J.—a statement Rickye K. denies having made.

If petitioner believed that the money belonged to Rickye K., he was required at a minimum to place the check in a separate trust account until his claim to the sum was resolved. (Rules Prof. Conduct of State Bar, rule 8-101(A)(2).) ■ "It is well settled that an attorney may not unilaterally determine his own fee and withhold trust funds to satisfy it even though he may be entitled to reimbursement for his services." (*Brody* v. *State Bar* (1974) 11 Cal.3d 347, 350, fn. 5 [113 Cal.Rptr. 371, 521 P.2d 107]; see also *Crooks* v. *State Bar* (1970) 3 Cal.3d 346, 358 [90 Cal.Rptr. 600, 475 P.2d 872].) ■ More significantly, petitioner never demonstrated any credible basis for his assertion that the money did not belong to Thelma J. He did not claim to know that Rickye K. had actually paid the money to her; he contended only that Rickye K. had indicated to him an intention to do so at some point in the future. The only other evidence of the payment offered by petitioner was his allegation that Thelma J. drove expensive automobiles which she could not have afforded had she not received cash from Rickye K.

This irresponsible and presumptuous conduct plainly constitutes the misappropriation of funds entrusted to petitioner in the course of his professional duties (*Murray* v. *State Bar* (1985) 40 Cal.3d 575, 584 [220 Cal.Rptr. 677, 709 P.2d 480]), a serious offense involving moral turpitude. (*Alberton* v. *State Bar, supra,* 37 Cal.3d at p. 15 [206 Cal.Rptr. 373, 686 P.2d 1177].) Furthermore, petitioner's subsequent threat to report Thelma J. to the

Attorney General if she pursued her claim to the refund violated rule 7-104 of the Rules of Professional Conduct, which prohibits an attorney from "threaten[ing] to present criminal, administrative or disciplinary charges to obtain an advantage in a civil action [or] . . . present[ing] or participat[ing] in presenting criminal, administrative or disciplinary charges solely to obtain an advantage in a civil matter."

### III. APPROPRIATE DISCIPLINE

Rules of Procedure of the State Bar, division V, standard 1.7(b) of the Standards for Attorney Sanctions for Professional Misconduct, states that "If a member is found culpable of professional misconduct in any proceeding in which discipline may be imposed and the member has a record of two prior impositions of discipline . . ., the degree of discipline in the current proceeding shall be disbarment unless the most compelling mitigating circumstances clearly predominate." Accordingly, the State Bar recommends that petitioner be disbarred. ■■ While the standards are not binding on this court (*Greenbaum* v. *State Bar, supra,* 43 Cal.3d at pp. 550-551 [237 Cal.Rptr. 168, 736 P.2d 754]), "we have frequently indicated that the State Bar's recommendation as to discipline is entitled to 'great weight' [citation]." (*Guzzetta* v. *State Bar* (1987) 43 Cal.3d 962, 968 [239 Cal.Rptr. 675, 741 P.2d 172].)

■■ An independent review of the record demonstrates that petitioner misappropriated funds entrusted to him in the course of his professional duties, a grievous offense "warrant[ing] disbarment in the absence of extenuating circumstances." (*Alberton* v. *State Bar, supra,* 37 Cal.3d at p. 15 [206 Cal.Rptr. 373, 686 P.2d 1177]; see also Rules Proc. of State Bar, div. V, Standards for Atty. Sanctions for Prof. Misconduct, std. 2.2(a).) He admittedly committed perjury to induce the execution of a lease which he proved unable to perform, and wrote multiple checks against insufficient funds. Furthermore, petitioner exhibits "a failure to appreciate the gravity of conduct which is conceded, and a contemptuous attitude toward the disciplinary proceedings, [which] are matters relevant to the appropriate sanction." (*Maltaman* v. *State Bar, supra,* 43 Cal.3d at p. 958 [239 Cal.Rptr. 687, 741 P.2d 185]; cf. *Segretti* v. *State Bar* (1976) 15 Cal.3d 878, 888 [126 Cal.Rptr. 793, 544 P.2d 929].)[2] Finally, he has been the subject of two prior disciplin-

---

[2] In his testimony before the hearing panel, petitioner attributed the disciplinary action against him to "this disciplinary frenzy" of the State Bar. With respect to the misappropriated funds, he said, "It was my money. I did nothing wrong . . . ." He stated to the hearing panel that "You've closed your own doors, I can't open them. You heard the testimony. You ruled improperly, I didn't. And now you're stuck with it." In his petition to this court, he stated that "I am ashamed the Bar is so inglorious. I never dreamed the Bar Association would cheat a lawyer and railroad anyone complained against. They seem small and insecure in their space. They can have it."

ary proceedings for the abandonment of clients and the failure to provide services for which he was retained. (*Hamilton* v. *State Bar, supra,* 23 Cal.3d at p. 879 [153 Cal.Rptr. 602, 591 P.2d 1254].)

To the limited extent petitioner concedes fault, the only mitigating considerations he offers are various personal difficulties relating to a divorce, illness, and a business failure. He contends, inter alia, that these difficulties justified his perjured lease application because his family was in need of housing. We concur with the finding of the hearing panel that "implicit in [petitioner's] assertions is his expectation that the consequence of his actions must be excused because of personal difficulties he was experiencing regardless of their effect on others."

The record demonstrates that petitioner is incapable of subordinating the exigencies of his personal life to inviolable professional obligations, nor even of acknowledging the responsibility to do so. He appears oblivious to the impropriety of his conduct. We have no reason to believe that petitioner, if allowed to continue in the practice of law, would amend his ways. Accordingly, we conclude that it is in the best interest of the public, the profession, and the courts that petitioner be disbarred. (*In re Severo* (1986) 41 Cal.3d 493, 500 [224 Cal.Rptr. 106, 714 P.2d 1244].)

It is ordered that Walter L. Marquette be disbarred from the practice of law, that his name be stricken from the roll of attorneys, that he comply with the requirement of Rule 955 of the California Rules of Court, and that he perform the acts specified in subdivisions (a) and (c) of the rule within 30 and 40 days, respectively, after the effective date of this order. This order is effective 30 days after the filing of this opinion.