[L.A. No. 31574. Nov. 12, 1982.]

JOHN ALAN MONTAG, Petitioner, v.
THE STATE BAR, Respondent.

722

COUNSEL

Weitzman, Fidler & Re and Howard L. Weitzman for Petitioner.

Herbert M. Rosenthal, Truitt A. Richey, Jr., and E. Susan Mahony-St. Clair for Respondent.

OPINION

THE COURT.*—In this disciplinary proceeding, we review the recommendation of the State Bar Court Review Department that petitioner John Alan Montag be suspended from the practice of law for one year (six months' actual suspension) for giving false testimony at a grand jury proceeding. We will accept the proposed discipline.

Petitioner was admitted to the practice of law in this state on January 10, 1963, and has no prior record of discipline. In the present proceeding, petitioner was charged with acts of soliciting murder and participating in a burglary, as well as testifying falsely before a grand jury. The State Bar found that the first two charges were not sustained because there was sufficient evidence that petitioner's participation therein resulted from duress. However, the State Bar also concluded that such duress had ceased by the time petitioner testified at the grand jury hearings. We first review the facts underlying the charges against petitioner.

In 1965, petitioner defended Jerald Dee Sartain on federal bank robbery charges. Sartain was convicted and imprisoned and, thereafter, petitioner corresponded and visited with him from time to time. In 1975, Sartain was released from prison and occasionally met with petitioner to discuss certain legal and personal matters. On September 20, 1975, Sartain called petitioner and requested a meeting. On the same day, Sartain and an associate, George McKinney, kidnaped petitioner at gunpoint and demanded money. McKinney threatened to kill petitioner who, under threat of harm, then cashed several checks for his captors. After seven hours of captivity, petitioner was released with the warning that if he notified the police, he, his parents and his relatives would be killed.

---

*Before Bird, C. J., Mosk, J., Richardson, J., Kaus, J., Broussard, J., Reynoso, J., and Potter, J.†

---

†Assigned by the Chairperson of the Judicial Council.

Two days later, petitioner met with Sartain who advised petitioner that McKinney was a psychopath who probably would return in three months and kill petitioner. Thereupon, the men agreed that Sartain would kill McKinney for $2,500. Petitioner obtained a $1,200 "down payment" from his parents and gave the money to Sartain, who later falsely told petitioner that he had killed McKinney.

The following day, Sartain offered to share the proceeds of a burglary with petitioner if he would pay $2,500 to finance it. Petitioner, believing the request was in essence blackmail, but being anxious to get rid of him, paid that sum to Sartain. A few days later, Sartain requested and received from petitioner an additional $1,000. Thereafter, petitioner rented a car for Sartain to facilitate the retrieval of loot from a burglary. Petitioner, believing that he had participated in a murder, did not inform the police of any of these incidents.

In November 1975, withholding any reference to his solicitation of McKinney's murder, petitioner revealed to police officers the events of September 20, 1975. Soon thereafter, petitioner falsely testified before a grand jury that Sartain and McKinney, with threats of bodily harm to petitioner, extorted $1,200 from him on September 23, 1975, $2,500 on October 1, and $1,000 on October 7, and that Sartain had obtained a car lease from him by extortion. Once again, petitioner concealed his solicitation of murder. Eventually, having secured immunity from criminal prosecution, petitioner fully disclosed to the authorities the nature of his earlier actions.

The hearing panel and review department each agreed that petitioner's solicitation of the murder of McKinney was performed under duress and therefore did not constitute culpable conduct. Similarly, with respect to petitioner's cooperation with Sartain, it was found that petitioner had no intent to share in the proceeds of any burglary or other crime. As for petitioner's grand jury testimony, however, both the hearing panel and the review department concluded that misconduct had occurred. .

The hearing panel found that (1) at the time petitioner testified before the grand jury, he knew that both Sartain and McKinney had been arrested and were in custody, (2) petitioner was a certified criminal law specialist who knew the laws regarding perjury and extortion, and (3) petitioner admitted at McKinney's criminal trial that his grand jury testimony was "categorically false," and constituted perjury. The hearing panel concluded that petitioner violated his oath and duties as an attorney (Bus. & Prof. Code, § 6103) and committed an act involving moral turpitude and dishonesty (id., § 6106). The panel recommended that petitioner be suspended from practice for one year, with execution stayed on conditions of probation for one year and actual suspension for forty-

five days. There was no requirement that petitioner comply with rule 955 of the Rules of Court.

Prior to the review department proceedings, petitioner filed a declaration asserting that at the time he testified before the grand jury, Sartain remained at large, and that petitioner remained in fear of him at that time.

The review department adopted most of the hearing panel's findings, but deleted the finding that both Sartain and McKinney were in custody during the grand jury proceedings, and substituted the finding (by a vote of seven to four) that "At the time [petitioner] so testified, he was not under duress." The review department also took judicial notice of the opinion in *People* v. *McKinney* (1979) 95 Cal.App.3d 712 [157 Cal.Rptr. 414] (containing, among other things, a reference to petitioner's "admitted" perjury, "committed in order to conceal the fact that he paid the money to Sartain to murder McKinney and to finance a Florida burglary for Sartain. . . ." (See pp. 721-722, 730.)) The review department concluded that petitioner should be placed on probation for one year with conditions including six months' actual suspension and compliance with rule 955.

In the present proceeding, petitioner contends that (1) the record fails to support the review department's finding that his grand jury testimony was not the product of duress, (2) the department should not have considered any facts contained in the *McKinney* opinion, (3) a six months' actual suspension is too severe, and (4) compliance with rule 955 is unnecessary.

### DISCUSSION

■ It is well settled that the burden is on petitioner to demonstrate that the findings of the State Bar Court are unsupported by substantial evidence. (E.g., *Gallagher* v. *State Bar* (1981) 28 Cal.3d 832, 837 [171 Cal.Rptr. 325, 622 P.2d 421].) Both the hearing panel and review department found that petitioner testified falsely before the grand jury. This finding is supported by the record, including petitioner's own sworn testimony at McKinney's trial. (Petitioner and his counsel stipulated herein that petitioner's trial testimony could be considered as if petitioner had been sworn and testified in the disciplinary proceedings.)

At that trial, petitioner admitted that his grand jury testimony was "categorically false," and constituted "perjury," in that he concealed the fact that he had solicited McKinney's murder, while affirmatively testifying that on various occasions after September 20, 1975, he had given sums of money to Sartain in order to appease McKinney, who had threatened to kill petitioner. By reason of petitioner's false testimony in this regard, four additional extortion

counts were filed against Sartain and McKinney. The transcript of McKinney's trial indicates that this false testimony was given after McKinney had been arrested and that it was motivated, at least in part, by a desire to conceal petitioner's criminal involvement in soliciting murder and assisting the burglary.

Petitioner argues that the record indicates that he "acted out of fear for his own personal safety and the safety of his family." Yet, the record also contains ample evidence to permit the State Bar to draw a contrary inference. Because McKinney was in custody, the immediate threat of harm from him had ceased by the time petitioner testified before the grand jury. Moreover, as petitioner's false grand jury testimony *incriminated* both Sartain and McKinney by charging them with acts of extortion, it is difficult to accept petitioner's assertion that he testified falsely out of fear of reprisal from these very men. Our independent review of the record leads us to conclude that petitioner's false testimony was induced primarily to conceal his own participation in possible criminal activities, including solicitation of murder and burglary.

Petitioner objects to the review department's consideration of the facts described in the *McKinney* opinion, but most of these facts were fairly drawn from petitioner's own testimony in that case. As we have previously noted, petitioner has stipulated that his former testimony might be considered and relied upon in this proceeding. In any event, we do not depend upon the *McKinney* opinion as a basis for our independent evaluation herein.

■ Further, petitioner argues that a six months' actual suspension is too severe a discipline for his misconduct. We disagree. The giving of false or perjured testimony in an official proceeding is serious misconduct warranting severe punishment. (See, e.g., *Olguin v. State Bar* (1980) 28 Cal.3d 195, 200 [167 Cal.Rptr. 876, 616 P.2d 858] [six months' actual suspension for acts including making false statements and presenting fabricated documents to a State Bar hearing officer]; *In re Kristovich* (1976) 18 Cal.3d 468, 476-477 [134 Cal.Rptr. 409, 566 P.2d 771] [three months' actual suspension for perjury]; *In re Jones* (1971) 5 Cal.3d 390, 401 [96 Cal.Rptr. 448, 487 P.2d 1016] [one-year actual suspension for subornation of perjury and offering false testimony].) As we stressed in *Olguin*, "It is the duty of an attorney . . . to employ only such means as are consistent with the truth, and to refrain from misleading any judge or any judicial officer by artifice or false statement of the law; the same duty applies to the proceedings conducted by the State Bar [citation] . . . . [F]alse testimony on a material issue is a serious breach of basic standards as well as a breach of the attorney's oath of office and his duties as an attorney. Grounds for disciplinary action will lie even though no harm results from such wrongful acts. [Citation.]" (P. 200.)

In the present case, petitioner's false testimony wrongfully incriminated McKinney and Sartain, resulting in extortion charges. Although these charges ultimately were dismissed, that fact does not lessen the seriousness of petitioner's misconduct. A six-months' actual suspension, followed by a substantial probation period, is amply warranted under these circumstances.

■ Lastly, petitioner challenges the State Bar's recommendation that he comply with rule 955 of the Rules of Court requiring him to apprise his clients of his suspension. Petitioner observes that the hearing panel had recommended that he not be ordered to comply with rule 995, but that the review department imposed such a condition. According to petitioner, "there is no indication that Petitioner's conduct in any way endangered his clientele." Yet, we have consistently required compliance with rule 955 in cases involving actual suspension, so that clients, other attorneys and the courts may be aware of the suspended attorney's inability to practice law. We see no compelling reason to deviate from that policy here.

The court adopts the recommendations of the State Bar and orders that petitioner (1) be suspended from practice for one year on the conditions of probation specified in the decision of the State Bar Court, including six months' actual suspension; (2) be required to comply with rule 955 of the California Rules of Court and that he perform the acts specified in subdivisions (a) and (c) of that rule within 30 and 40 days, respectively, after the effective date of this order; (3) take and pass the Professional Responsibility Examination within one year of the effective date hereof; and (4) report to the State Bar on a regular basis as recommended by the State Bar. This order is effective 90 days after the filing of this opinion.