[No. S006505.  Aug.  14,  1989.]

In re LAWRENCE REX YOUNG on Suspension.

COUNSEL

Lily Barry for Petitioner.

Diane C. Yu, Truitt A. Richey, Jr., Richard J. Zanassi and William Stralka for Respondent.

OPINION

**THE COURT.**—We review the recommendation of the Review Department of the State Bar Court that petitioner, Lawrence Rex Young, be suspended from the practice of law for five years, that the order of suspension be stayed, and that he be placed on probation for five years on specified conditions, including three years' actual suspension, various reporting conditions, and supervision by a probation monitor. This recommendation

followed his felony conviction of one count of violating Penal Code section 32 (accessory to a felony).[1]

After considering the record and the arguments of petitioner, we adopt the review department's recommendation in all respects, except we require that petitioner be placed on actual suspension for four years with credit given for the time he has been on interim suspension from July 18, 1986, to the effective date of this opinion.

## FACTS

Petitioner was admitted to the practice of law in 1966. He has not been the subject of any prior discipline. On June 18, 1986, we ordered that he be placed on interim suspension following his conviction of one count of violating Penal Code section 32.[2] After petitioner's conviction became final, we issued an order to show cause why final discipline should not be imposed. In both of the orders we suggested that petitioner's crime involved moral turpitude on its face. We referred the question of discipline to the State Bar.

We adopt the findings of the hearing panel and review department as follows: On August 2, 1984, Karen Geburs and Jon McDaniel were arrested for a robbery in which McDaniel had allegedly shot the victim. The victim died a few months later. Petitioner had known Geburs and McDaniel for about 10 years, having represented them and their families in several legal matters. McDaniel was a client, occasional employee, and friend of petitioner.[3] After their arrest, Geburs and McDaniel informed petitioner that they wanted to see him. Geburs was released on bail, but subsequently failed to appear at her arraignment. McDaniel was not charged with the robbery at this time and he was simply released. Shortly thereafter, an arrest warrant issued for McDaniel.

In late August 1984, petitioner received phone calls from McDaniel from Hawaii. McDaniel requested financial help from petitioner for food and other necessities and informed petitioner that he intended to find a job in

---

[1] He was sentenced to one year in county jail, stayed for a period of one year, required to pay a fine of $3,000, penalty assessment waived, put on probation for three years, and the court ordered that he provide one thousand hours of community service.

[2] Penal Code section 32 provides: "Every person who, after a felony has been committed, harbors, conceals or aids a principal in such felony, with the intent that said principal may avoid or escape from arrest, trial, conviction or punishment, having knowledge that said principal has committed such felony or has been charged with such felony or convicted thereof, is an accessory to such felony." In the criminal proceedings, the trial court agreed to strike the terms "conceals" and "or escape from" from the charge against petitioner.

[3] Although McDaniel was petitioner's client in other matters, petitioner did not represent him on the robbery charge.

order to raise enough money for bail and then return to California to face the charges against him. Petitioner sent money to McDaniel at different times in amounts of $100 to $150 (the aggregate amount totalled $800 to $1,000), but he consistently counselled McDaniel to return to California and allow him to arrange for McDaniel's surrender.

On December 22, 1984, petitioner spoke with a deputy district attorney regarding the death of the victim of McDaniel's robbery and the possibility that murder charges could be filed against McDaniel. Murder charges were not filed at this time.

In early 1985, McDaniel returned to California with Geburs. Petitioner, a devoted member of the Episcopal Church, believed McDaniel and Geburs needed to go through a "soul searching" process to help give them the courage to surrender. Petitioner took them to attend mass and unsuccessfully tried to have them make confessions to two Episcopal priests. Petitioner also continued to try to convince them to allow him to arrange for their surrender, but they did not heed his advice.

In late February 1985, McDaniel informed petitioner that he had been arrested for petty theft and had given the police a false name. As a result, the police were unaware that he was a fugitive. Petitioner agreed to arrange bail on the condition that McDaniel would allow him to arrange for his surrender. Petitioner, following McDaniel's request, arranged for bail under the false name and secured his release. Petitioner did not disclose McDaniel's true name to the bail bondsman or any other officer of the court, even though he knew McDaniel was a wanted fugitive.

McDaniel's arraignment for petty theft was scheduled for March 29, 1985. Prior to the hearing, Geburs and McDaniel told petitioner that they planned to surrender on the robbery charges at the arraignment. Two days before the arraignment, petitioner brought them to his office to prepare them for the arraignment for petty theft and their surrender on the robbery charges. After the conference, petitioner suggested that they stay at a motel close to the courthouse. Petitioner drove them to a motel, and was arrested there along with Geburs and McDaniel.

## PROCEEDINGS

The hearing panel, consisting of a single referee, found that petitioner was motivated by the intent to persuade McDaniel to surrender and not to facilitate his fleeing the jurisdiction. Despite his good motives, petitioner acknowledged that his conduct was improper and inexcusable.

The hearing panel found that petitioner would have breached his attorney-client duty if he had disclosed his client's true identity to the bail bondsman. Further, the hearing panel determined that under the totality of facts and circumstances here, there was no indication that petitioner would not have disclosed his client's true identity at the arraignment as required by the Los Angeles Superior Court Criminal Trial Judges' Benchbook.[4] Thus, the hearing panel concluded that petitioner did not act in bad faith, dishonesty or concealment, or significantly harm the administration of justice by withholding his client's name from the bail bondsman. It also found that petitioner's financial assistance to McDaniel did not significantly harm the administration of justice, but did constitute a violation of former rule 7-101 of the Rules of Professional Conduct.[5] The hearing panel found credible petitioner's testimony that had he known his client did not intend to surrender, he would have refrained from assisting him. In addition, the hearing panel concluded that the totality of facts and circumstances surrounding petitioner's crime did not involve moral turpitude.

The hearing panel found several factors in mitigation and no factors in aggravation. However, it determined that while petitioner did not share his client's motives to avoid arrest, his actions did enable the client to elude arrest. It concluded that petitioner violated his oath and duties as an attorney under Business and Professions Code sections 6103 and 6068 and recommended that he be suspended from the practice of law for five years on conditions of probation, including an actual suspension of six months.[6]

The review department adopted most of the hearing panel's findings and conclusions of law with some notable exceptions. First, the review department determined that petitioner committed a fraud upon the court and significantly harmed the administration of justice by not disclosing his client's true name to the bail bondsman or to officers of the court responsible for bail. Second, it found that petitioner knew that McDaniel had commit-

---

[4] The Los Angeles Superior Court Criminal Judges' Benchbook provides in relevant part: "The function of the arraignment is to identify the defendant and advise him of the charges pending. . . .

"  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .

"During the arraignment the court must inquire if the name utilized by the defendant under which he is prosecuted is the true name of the defendant. . . ." (Los Angeles Superior Court Criminal Trial Judges' Benchbook, Arraignment and Plea, ch. 1(c), pt. 1, pp. 11-12.)

[5] Rule 7-101 provides: "A member of the State Bar shall not advise the violation of any law, rule or ruling of a tribunal unless he believes in good faith that such law, rule or ruling is invalid. A member of the State Bar may take appropriate steps in good faith to test the validity of any law, rule or ruling of a tribunal." We note that the hearing panel's finding of a violation of rule 7-101 is at odds with its finding that petitioner consistently counselled McDaniel to surrender. We note that former rule 7-101 is now rule 3-210, operative May 27, 1989.

[6] Unless otherwise indicated, all further statutory references are to the Business and Professions Code.

ted murder after his discussion with the deputy district attorney. Third, the review department found that petitioner's financial assistance to McDaniel significantly harmed the administration of justice. The department also found that the facts and circumstances surrounding petitioner's conduct confirmed that his acts constituted moral turpitude under section 6106 and that petitioner violated his oath as an attorney under section 6068 and section 6103. By a six-to-five vote, the review department recommended that petitioner be suspended for five years with three years' actual suspension to begin the date on which our order herein becomes effective.[7]

### SUFFICIENCY OF FINDINGS

■ At the outset, we note that our prior orders recited that petitioner's crime involved moral turpitude. Petitioner's crime of violating Penal Code section 32 establishes that he assisted a person with the specific intent to help him avoid arrest and with the knowledge that the person had committed a felony or had been charged with committing such felony. This crime necessarily involves moral turpitude since it requires that a party has a specific intent to impede justice with knowledge that his actions permit a fugitive of the law to remain at large. An attorney convicted of this crime necessarily acts with conscious disregard of his obligation to uphold the law. (See, e.g., *In re Lindgren* (1979) 25 Cal.3d 65, 66 [157 Cal.Rptr. 518, 598 P.2d 488] [conviction of being an accessory after the fact to an obstruction of a criminal investigation necessarily involves moral turpitude]; *In re Hanley* (1975) 13 Cal.3d 448 [119 Cal.Rptr. 5, 530 P.2d 1381] [bribing a witness not to testify involves moral turpitude on its face]; *In re Craig* (1938) 12 Cal.2d 93 [82 P.2d 442] [conspiracy to obstruct justice involves moral turpitude on its face].) We conclude that petitioner's crime involved moral turpitude on its face.

Petitioner contests certain amendments the review department made to the hearing panel's findings and argues that we should not adopt these amendments. Since we have already established that petitioner's crime involved moral turpitude, we consider petitioner's contentions only with respect to their effect on the appropriateness of the review department's disciplinary recommendation.

■ The State Bar Court's findings, whether made by the review department or the hearing panel are not binding on this court. (*Coppock* v. *State Bar* (1988) 44 Cal.3d 665, 667 [244 Cal.Rptr. 462, 749 P.2d 1317].) We generally give more weight to the factual findings of the hearing panel since

---

[7] Two dissenting referees believed the recommended discipline was insufficient. One dissenter believed the recommendation was excessive. The other two dissenters did not express their views.

it has a better opportunity to observe the testimony of various witnesses. (*Franklin* v. *State Bar* (1986) 41 Cal.3d 700, 708 [224 Cal.Rptr. 738, 715 P.2d 699].) However, we must independently examine the evidence and determine its sufficiency in State Bar disciplinary matters. (*Ibid.*) We resolve all doubts in favor of the attorney. (*Galardi* v. *State Bar* (1987) 43 Cal.3d 683, 689 [238 Cal.Rptr. 774, 739 P.2d 134].) Petitioner bears the burden of demonstrating that the findings are not supported by the evidence. (*Ibid.*)

(3) Specifically, petitioner contends that there is insufficient evidence to support the review department's finding that he committed a fraud on the court by arranging bail for McDaniel under a false name. He admits that he should not have arranged bail, but he argues that he had no duty to disclose his client's name to the bail bondsman and he had an ethical duty within the attorney-client relationship not to disclose his client's confidences. Petitioner contends that he believed his duty to disclose his client's true identity was at the arraignment.

Petitioner also contests the sufficiency of evidence supporting the review department's finding that he knew the crime his client had committed was murder. He admits that he was aware that the victim of the robbery had died, but he alleges that he was uncertain of the cause of the victim's death and murder charges were not filed against his client until April 25, 1985, a month after he was arrested.

Petitioner's conviction establishes that he acted with the intent to help his client avoid arrest. Further, petitioner violated his oath and duties as an attorney under sections 6068 and 6103 when he arranged bail for his client under a false name. An attorney's duty to maintain his client's confidences does not extend to affirmative acts which further a client's unlawful conduct.[8] While petitioner admittedly had no duty to disclose that his client gave the arresting officer a false name, he had a duty not to further his client's unlawful conduct by arranging bail for him under a false name. Petitioner's actions misled the bail bondsman and the officers of the court responsible for bail and allowed a fugitive wanted for a violent felony to evade prosecution. We conclude that there is sufficient evidence that petitioner acted dishonestly, and that his misconduct constituted a fraud on the court.

We do disagree with the review department's finding that petitioner knew that McDaniel had committed murder. In December 1984, petitioner called

---

[8] Petitioner's client violated Penal Code section 148.9, which makes it a crime to give a false name to an arresting officer.

the deputy district attorney who had investigated the robbery and informed him that the victim had died. He asked the deputy district attorney if murder charges would be filed against McDaniel. At this time, the district attorney was uncertain since he was unaware of the cause of death. Petitioner was also unaware of the cause of death. Murder charges were not filed against McDaniel until April 1985. At worst, petitioner—who did handle some criminal matters—knew there was a possibility that McDaniel might eventually be charged with murder, but at all times prior to his arrest, the evidence indicates that he only knew McDaniel had committed robbery.[9]

## APPROPRIATE DISCIPLINE

■ Petitioner contends the review department's recommendation of three years' actual suspension prospective to his interim suspension is excessive. We agree.

■ In determining what discipline to impose on an attorney, we generally place greater weight on the recommendation of the review department than the hearing panel. (*Coppock* v. *State Bar, supra,* 44 Cal.3d at p. 682.) However, before imposing any discipline, we must conduct an independent review and determine whether the recommended discipline is appropriate. (*In re Ford* (1988) 44 Cal.3d 810, 815 [244 Cal.Rptr. 476, 749 P.2d 1331].) Petitioner bears the burden of showing that the recommended discipline is inappropriate. (*In re Dedman* (1976) 17 Cal.3d 229, 233 [130 Cal.Rptr. 504, 550 P.2d 1040].) In arriving at an appropriate discipline, we balance all relevant factors, including mitigating circumstances, on a case-by-case basis. (*Schneider* v. *State Bar* (1987) 43 Cal.3d 784, 798 [239 Cal.Rptr. 111, 739 P.2d 1279].) The discipline ultimately imposed must be consistent with its purpose, that of protecting the public, the courts, and the legal profession from unfit practitioners. (*In re Nevill* (1985) 39 Cal.3d 729, 734 [217 Cal.Rptr. 841, 704 P.2d 1332].)

In its recommendation of discipline the review department relied on standard 3.2 of the Standards for Attorney Sanctions for Professional Misconduct (Rules Proc. of State Bar, div. V) (hereafter Standards for Attorney Sanctions), which provides: "Final conviction of a member of a crime which involves moral turpitude, either inherently or in the facts and circumstances surrounding the crime's commission shall result in disbarment. Only if the most compelling mitigating circumstances clearly predominate, shall disbarment not be imposed. In those latter cases, the discipline shall not be less than a two-year actual suspension, *prospective to any interim suspension*

---

[9] Petitioner contends that there is no evidence to support the review department's finding that he posted bail for Karen Geburs. We agree. The record indicates Geburs's former husband posted bail for her.

*imposed,* irrespective of mitigating circumstances." (Italics added.) This standard thus requires a recommendation of at least two years of actual suspension without regard to any period of interim suspension.

██  Petitioner asserts that the review department's reliance on standard 3.2 of the Standards for Attorney Sanctions (hereafter standard 3.2) results in an unduly harsh recommendation of discipline because the standard precluded the review department from considering the time he had spent on interim suspension.[10] Petitioner's argument has merit.

█ ██ ██  ██  We question whether strict reliance on standard 3.2 leads to just and consistent recommendations from the State Bar Court.[11] The length of an interim suspension is frequently out of the control of the suspended member since the proceedings may be delayed by the State Bar. Even if there is no delay on the part of the State Bar, any member who in good faith pursues an appeal of his or her conviction or a vigorous defense in the State Bar proceedings will frequently endure a longer interim suspension than a member who does not appeal his conviction or contest the State Bar Court's findings and recommendations. The State Bar Court, therefore, is compelled if it strictly follows standard 3.2 to make disciplinary recommendations that essentially penalize such a member since it must recommend at least two years' actual suspension and it may not credit or otherwise consider a petitioner's time on interim suspension.

In relying on standard 3.2, the State Bar Court may therefore make the same disciplinary recommendations for two members similarly situated, but the amount of time each member spends on actual suspension if we impose its recommendations depends on the arbitrary factors of whether the member was on interim suspension and, if so, the length of the interim suspension.[12] Without any means in the standard as it is presently constituted to

---

[10]The recommended discipline results in an actual suspension of approximately six years since petitioner has already spent three years on interim suspension.

[11]While the State Bar Court should always look to the Standards for Attorney Sanctions for guidance when making a disciplinary recommendation, it is not compelled to strictly follow them in every case. (See *Greenbaum* v. *State Bar* (1987) 43 Cal.3d 543, 550 [237 Cal.Rptr. 168, 736 P.2d 754] [the standards are guidelines for the State Bar Court].) However, we note that the State Bar Court should follow the guidance of the Standards for Attorney Sanctions whenever possible to help ensure greater consistency in disciplinary sanctions for similar offenses.

[12]Even the mere incident of being placed on interim suspension can be arbitrary. For example, in *Chadwick* v. *State Bar, ante,* p. 103 [260 Cal.Rptr. 538, 776 P.2d 240], the member was convicted of violating a federal statute prohibiting insider trading, a crime involving moral turpitude; however, for some unexplained reason there was no conviction referral proceeding pursuant to sections 6101 and 6102 and rule 951, California Rules of Court. As a result, the member was not placed on interim suspension although we might have imposed such suspension if his conviction had been properly subjected to a conviction referral proceeding.

correct for these arbitrary factors, we must conclude strict reliance on standard 3.2 does not appear to adequately fulfill the goal of ensuring that the State Bar Court's disciplinary recommendations are fair and consistent.[13] (See *Guzzetta* v. *State Bar* (1987) 43 Cal.3d 962, 967 [239 Cal.Rptr. 675, 741 P.2d 172, 65 A.L.R.4th 1] [we noted that the Board of Governors of the State Bar adopted the Standards for Attorney Sanctions to "achieve greater consistency in disciplinary sanctions for similar offenses"].)

■    The Standards for Attorney Sanctions are instructive, but they are simply guidelines for the State Bar and we are not compelled to follow them. (*Greenbaum* v. *State Bar, supra*, 43 Cal.3d 543, 550; see *In re Nadrich* (1988) 44 Cal.3d 271, 277, fn. 3 [243 Cal.Rptr. 218, 747 P.2d 1146] [the court specifically noted that standard 3.2 was instructive, but only imposed a one-year actual suspension on attorney who committed a crime involving moral turpitude].) We do not apply rigid disciplinary standards, but rather resolve each case on its own facts. (See *In re Nadrich, supra,* 44 Cal.3d at p. 277.) Although standard 3.2 fails to take into account the time a member has spent on interim suspension, we may consider it as a factor in determining whether the review department's disciplinary recommendation is appropriate. (*In re Basinger* (1988) 45 Cal.3d 1348, 1361 [249 Cal.Rptr. 110, 756 P.2d 833]; see *In re Cadwell* (1975) 15 Cal.3d 762, 772-773 [125 Cal.Rptr. 889, 543 P.2d 257] [we gave attorney credit for his time on interim suspension].) Nonetheless, "we will not reject a recommendation arising from application of the Standards unless we have grave doubts as to the propriety of the recommended discipline." (*Lawhorn* v. *State Bar* (1987) 43 Cal.3d 1357, 1366 [240 Cal.Rptr. 848, 743 P.2d 908].) We have such doubts in this matter.    ■    The review department's reliance on standard 3.2 results in an inappropriate recommendation in light of petitioner's long interim suspension, his other compelling mitigating factors and the facts and circumstances surrounding petitioner's crime.

Petitioner's conviction is conclusive evidence of his guilt (§ 6101); however, the facts and circumstances surrounding the crime suggest petitioner did not act out of self interest or any effort to obtain financial gain, but rather was motivated by his deep conviction that he should help those in need. Although petitioner became overzealous in the service of McDaniel and violated his ethical and legal duties, his misconduct is tempered by the fact that he intended to convince his client to surrender, not to help his client flee the jurisdiction. Petitioner's acts, such as having his client attend mass and placing him in a motel close to the court where the arraignment

---

[13] The unfairness of standard 3.2 is particularly clear when we compare it to the rule allowing disbarred members to apply for reinstatement after five years, including any time spent on interim suspension. (Rules Proc. of State Bar, rule 662.) In a case of a lengthy interim suspension such as this, a member could be better off being disbarred than suspended.

was to take place, lend support to the finding that petitioner had good motives. (See 1 Witkin, Cal. Procedure (3d ed. 1985) Attorneys, § 470, p. 519 [intent or good motive is not a complete defense, but they are important factors in the mitigation of the penalty].)

Petitioner also points to additional mitigating factors. The hearing panel found that petitioner has taken steps since his conviction to ensure that he recognizes the limits of his ethical and legal duties in the future. Petitioner entered psychological therapy over two years ago and continues to receive treatment. One of petitioner's therapists, in a letter that was part of the State Bar Court's record, expressed the view that petitioner has learned there are limits to his former belief that "good works and God's help" can solve all problems. He also noted that the possibility of recidivism was very low. Further, we take judicial notice that petitioner has taken and passed the Multi-State Professional Responsibility Examination while on interim suspension. We consider petitioner's rehabilitative efforts especially significant because they give some indication about petitioner's present fitness to practice law. (See *In re Cohen* (1974) 11 Cal.3d 935, 943 [114 Cal.Rptr. 611, 523 P.2d 651].)

Beside his efforts at rehabilitation, the hearing panel and review department found several other mitigating factors. For example, petitioner had practiced for 20 years without any prior complaints or any other disciplinary proceedings. Absence of a prior disciplinary record is an important mitigating circumstance when an attorney has practiced for a significant period of time. (*Chefsky* v. *State Bar* (1984) 36 Cal.3d 116, 132, fn. 10 [202 Cal.Rptr. 349, 680 P.2d 82]; *Waysman* v. *State Bar* (1986) 41 Cal.3d 452, 457 [224 Cal.Rptr. 101, 714 P.2d 1239].) Furthermore, petitioner was fully cooperative with authorities after his arrest and at the State Bar hearings and fully acknowledged that his conduct was wrongful. (See *In re Higbie* (1972) 6 Cal.3d 562, 574 [99 Cal.Rptr. 865, 493 P.2d 97].) We also consider petitioner's remorse over this incident as a significant mitigating circumstance. (See *Demain* v. *State Bar* (1970) 3 Cal.3d 381, 388 [90 Cal.Rptr. 420, 475 P.2d 652].)

Moreover, there is considerable testimony from character witnesses, including members of the bar, clients, and representatives of the Episcopal Church, indicating that this single incident was completely out of character for the petitioner and highly unlikely to recur. Several others wrote letters in behalf of petitioner. The hearing panel gave the testimony and the letters significant weight. We consider this evidence as a mitigating factor. (See *In re Jones* (1971) 5 Cal.3d 390, 401 [96 Cal.Rptr. 448, 487 P.2d 1016].)

In addition, there is substantial evidence indicating that petitioner had overextended himself to the point of physical, mental and emotional

exhaustion prior to the circumstances that led to his conviction. (See *Price v. State Bar* (1982) 30 Cal.3d 537, 549 [179 Cal.Rptr. 914, 638 P.2d 1311] [we noted it was a mitigating factor that prosecutor was under mental and emotional stress for some time prior to and during the period when his misconduct occurred].)

In light of all the relevant evidence, we consider the review department's recommendation of five years' probation and three years' actual suspension prospective to petitioner's interim suspension as excessive. We conclude that placing petitioner on probation for five years with an actual suspension of four years, but giving petitioner credit for the time he has spent on interim suspension is a more appropriate discipline and adequate to protect the public.[14] (See, e.g., *Chadwick* v. *State Bar, supra, ante,* at p. 112 [attorney convicted of violating federal statutes prohibiting insider trading, a crime involving moral turpitude; five years' probation, one year actual suspension, no interim suspension]; *Bach* v. *State Bar* (1987) 43 Cal.3d 848, 856 [239 Cal.Rptr. 302, 740 P.2d 414] [attorney sought to deliberately mislead judge by denying notice of order to produce client at mediation hearing; three years' probation, sixty days' actual suspension]; *In re Chira* (1986) 42 Cal.3d 904, 909 [231 Cal.Rptr. 560, 727 P.2d 753] [attorney convicted of conspiracy to impede the lawful function of the Internal Revenue Service by backdating a transaction as part of a tax shelter; we found attorney's conduct evinced moral turpitude, but determined actual suspension was inappropriate; no interim suspension]; *Montag* v. *State Bar* (1982) 32 Cal.3d 721 [186 Cal.Rptr. 894, 652 P.2d 1370] [false testimony before the grand jury and other misconduct, resulting in six months' actual suspension].)

Accordingly, it is ordered that Lawrence Rex Young be suspended from the practice of law for five years from the date that this opinion is final, that execution of the order of suspension be stayed and he be placed on probation for a period of five years on the following conditions: (1) That he be placed on actual suspension for four years with credit from July 18, 1986, to the effective date of this order for the time he has been on interim suspension;

(2) That during the period of probation, he shall comply with the provisions of the State Bar Act and Rules of Professional Conduct of the State Bar of California;

(3) That during the period of probation, he shall report not later than January 10, April 10, July 10 and October 10 of each year or part thereof

---

[14] Petitioner has been on interim suspension since July 18, 1986. By giving petitioner credit for his time on interim suspension, he will be placed on actual suspension for approximately one year. Petitioner will be placed on probation for five years from the effective date of the order set out below.

during which the probation is in effect, in writing, to the Office of the Clerk, State Bar Court, Los Angeles, which report shall state that it covers the preceding calendar quarter or applicable portion thereof, certifying by affidavit or under penalty of perjury (provided, however, that if the effective date of probation is less than 30 days preceding any of said dates, he shall file said report on the due date next following the due date after said effective date):

(a) in his first report, that he has complied with all provisions of the State Bar Act and Rules of Professional Conduct since the effective date of said probation;

(b) in each subsequent report, that he has complied with all provisions of the State Bar Act and Rules of Professional Conduct during said period;

(c) provided, however, that a final report shall be filed covering the remaining portion of the period of probation following the last report required by the foregoing provisions of this paragraph, certifying to the matters set forth in subparagraph (b) hereof;

(4) That petitioner shall be referred to the Department of Probation, State Bar Court, for assignment of a probation monitor referee. Petitioner shall promptly review the terms and conditions of his probation with the probation monitor referee to establish a manner and schedule of compliance, consistent with these terms of probation. During the period of probation, petitioner shall furnish such reports concerning his compliance as may be requested by the probation monitor referee. Petitioner shall cooperate fully with the probation monitor to enable him/her to discharge his/her duties pursuant to rule 611, Rules of Procedure of the State Bar;

(5) During the period of probation, petitioner shall maintain on the official membership records of the State Bar, as required by section 6002.1, his current office or other address for State Bar purposes and all other information required by that section. Petitioner shall report to the membership records office of the State Bar all changes of information as prescribed by said section 6002.1;

(6) That petitioner shall obtain psychiatric or psychological help from a duly licensed psychiatrist or a clinical psychologist at his own expense and shall furnish evidence to the Office of the State Bar Court, Los Angeles, that he is so complying with each report that he is required to render under these conditions of probation; provided, however, that should it be determined by said psychiatrist or psychologist that the respondent does not need psychiatric or psychological help, he may furnish to the State Bar a written

statement from said psychiatrist or psychologist so certifying by affidavit or under penalty of perjury, in which event no reports or further reports shall be required and he shall not be required to obtain such psychiatric or psychological help;

(7) That except to the extent prohibited by the attorney-client privilege and the privilege against self-incrimination, he shall answer fully, promptly and truthfully to the presiding referee of the State Bar Court, his designee or to any probation monitor referee assigned under these conditions of probation at the petitioner's office or an office of the State Bar (provided, however, that nothing herein shall prohibit the petitioner and the presiding referee, designee or probation monitor referee from fixing another place by agreement) any inquiry or inquiries directed to him personally or in writing by said presiding referee, designee, or probation monitor referee relating to whether petitioner is complying or has complied with these terms of probation; and

(8) That at the expiration of said probation period, if he has complied with the terms of probation, said order of the Supreme Court suspending petitioner from the practice of law for a period of five (5) years shall be satisfied and the suspension shall be terminated.

This order is effective upon finality of this decision in this court. (See Cal. Rules of Court, rule 24(a).)