[No. S009882. May 31, 1990.]

THOMAS J. CONNOR, Petitioner, v.
THE STATE BAR OF CALIFORNIA, Respondent.

---

COUNSEL

Harney & Packer and Gert K. Hirschberg for Petitioner.

Diane C. Yu, Truitt A. Richey, Jr., Major Williams, Jr., and Patsy J. Cobb for Respondent.

---

OPINION

**THE COURT.**—We review the recommendation of the Review Department of the State Bar Court (review department) that petitioner, Thomas J.

Connor, be suspended from the practice of law for a period of two years, that the order of suspension be stayed, and that he be placed on probation for two years. The recommended conditions of probation include 90 days' actual suspension.[1]

Petitioner contends that the review department erroneously and without clear and convincing evidence found that he wilfully violated his oath and duties as an attorney (Bus. & Prof. Code, §§ 6068 and 6103), committed an act involving moral turpitude and dishonesty (Bus. & Prof. Code, § 6106), and acquired an interest adverse to a client without advising the client to seek the advice of independent counsel as to the transaction (former rule 5-101, Rules Prof. Conduct of State Bar).[2]

Although we agree with the review department that petitioner violated former rule 5-101, we conclude that the record does not support the review department's reversal of the hearing panel's finding that petitioner was not intentionally dishonest and did not commit an act of moral turpitude.

In view of petitioner's lack of a prior disciplinary record and our conclusion that the evidence does not support the review department's conclusion that petitioner was intentionally dishonest, we conclude that 90 days' actual suspension is excessive. After considering the record and arguments of petitioner and the State Bar, we impose the discipline of public reproval.

## I. FACTS

Petitioner was admitted to the practice of law in 1965. Since his admission, petitioner's practice has been primarily in the personal injury field. He has also handled some subrogation, workers' compensation and criminal law matters. The present disciplinary proceeding arises out of his conduct in one matter. At the time the incident in question occurred, petitioner's only partner in law was his girlfriend, Cecile Rego, an attorney and licensed real estate broker who handled the firm's real estate matters. Rego was admitted to the practice of law in December 1980 and became petitioner's partner in early 1981.

In April 1981, Ernest Chambers, a licensed real estate agent with several years' experience, contacted petitioner regarding a threatened foreclosure

---

[1] The recommended discipline also specifies that petitioner take and pass the Professional Responsibility Examination within one year of the effective date of our order and comply with the provisions of rule 955 of the California Rules of Court.

[2] New Rules of Professional Conduct became operative on May 27, 1989. Unless otherwise indicated, all further references to rules are to the former Rules of Professional Conduct of the State Bar.

on Chambers's residence in Lake Arrowhead, California. Prior to that time, petitioner had represented Chambers in several matters, including a drunk driving charge and a pending personal injury claim. Because he lacked experience in real estate, petitioner referred the foreclosure matter to Rego.

After Rego and Chambers conferred, Rego asked petitioner to assist Chambers in obtaining financing to avoid the foreclosure. Petitioner agreed to do so. Rego proposed a plan whereby petitioner would acquire full title to Chambers's property and then obtain a home equity loan on the property. Petitioner would then provide the loan proceeds to Chambers, who would cover his delinquent payments on the loan and avoid foreclosure. Once foreclosure was avoided, Chambers was to reassume payment of the loans and petitioner would quitclaim his interest in the property. As part of this plan, petitioner signed several documents that related to an application by petitioner for a home equity loan with Pacific Federal Savings & Loan Association (Pacific Federal).[3]

One of the documents petitioner signed was a home equity loan application. The completed application incorrectly indicated, by a check mark, that petitioner intended to occupy the Lake Arrowhead property as his primary residence. Petitioner did not, in fact, intend to occupy that property. The loan application also incorrectly stated that petitioner's address at that time was the Lake Arrowhead property. A third erroneous statement on the application indicated that petitioner was currently renting and buying the Lake Arrowhead property from Chambers.

Petitioner testified before the hearing panel that he did not remember whether he signed the loan application before or after it had been filled out, nor did he remember whether the mark indicating his intention to reside on the property appeared before he signed the document. Petitioner also testified that the mark was not in his handwriting.

The loan application was approved. Petitioner received a fee of approximately $4,500 for his role in obtaining the financing.[4] When the loan proceeds of approximately $55,000 were received, they were distributed to Chambers in accordance with the agreement.[5] However, Chambers made only one payment on the loan before defaulting. Petitioner made some

---

[3] Petitioner signed a home equity loan application, a note, and a deed of trust.

[4] Petitioner testified that he and Rego received $4,500 each in fees for obtaining financing for Chambers. The agreement provided that both he and Rego were to share $10,000 in fees, but this amount was later reduced to $9,000.

[5] In August 1981, petitioner and Chambers memorialized their oral agreement in writing. This agreement postdated the loan application, which was executed and submitted in July 1981.

payments on the loan but ultimately stopped. Petitioner advised Chambers to obtain other counsel and withdrew from further representation of Chambers in the pending personal injury matter.

At no time did petitioner provide Chambers with a written explanation regarding the possible ramifications or potential conflicts of the business transaction entered into between petitioner and Chambers; nor did he advise Chambers to seek the advice of independent counsel concerning the transaction.

*State Bar Disciplinary Proceedings*

In November 1987, a three-member hearing panel of the State Bar Court (hearing panel) heard the matter. At the hearing, petitioner testified that he unwisely did not read the application prior to signing it because he was relying on the real estate expertise of his partner, Rego, who prepared the loan application. He testified that he could not recall whether the application was completed or blank when he signed it, and also could not recall whether the handwritten check, indicating his intent to occupy the property, had already been made when he signed the application, although he did indicate that the mark did not appear to be in his handwriting.

Petitioner further testified that he was unaware of the significance of the statement regarding the intent to occupy the property and was unaware that approval of the loan was contingent upon the prospective borrower's intent to reside on the property. He indicated that he believed his credit rating was sufficient, without falsification, to enable him to obtain a loan on Chambers's behalf.

Petitioner maintained that his involvement in the loan transaction was limited to signing the documents Rego presented to him. He stated that he met with Chambers concerning the matter on only two occasions. The initial meeting in April 1981 lasted approximately five minutes. The second meeting in August 1981 lasted approximately fifteen minutes. During that meeting Chambers bargained with petitioner and convinced him to reduce the fee from $10,000 to $9,000. Petitioner testified that this was the only time he devoted to the transaction prior to its consummation. Petitioner also recalled depositing approximately $9,000 into his firm's general account, of which $3,000 was later paid to Pacific Federal against the outstanding loan.

Neither Chambers nor Rego was called to testify at the hearing with regard to the preparation or submission of the loan application. The only other witness presented by the State Bar was a Pacific Federal loan officer,

who testified that at the time the loan application was submitted, it was the bank's policy not to approve home equity loan applications unless the borrower intended to occupy the property as his or her primary residence. The loan officer also testified, however, that he had not been involved in petitioner's application, and thus he did not know whether petitioner was aware of the bank's policy at that time.

On the basis of this testimony and the documents involved in the loan transaction, the hearing panel concluded that petitioner had violated section 6068 of the Business and Professions Code and former rule 5-101 in entering into a business transaction with a client without first advising him to seek independent counsel, but that there was insufficient evidence to support a finding that petitioner had been intentionally dishonest or that his client had suffered any pecuniary loss as a result of the violations. By a two-to-one vote, the hearing panel recommended that the matter be terminated by way of admonition pursuant to rule 415 of the State Bar Rules of Procedure. The dissenting referee concluded that petitioner had not committed any culpable offense.

The State Bar filed an objection to the admonition, and pursuant to rule 415 of the State Bar Rules of Procedure, the admonition was set aside and a disciplinary hearing was scheduled.

The three referees reconvened on June 22, 1988, to determine discipline. No new evidence was presented. Based upon the evidence introduced at the initial hearing, the hearing panel again found that petitioner had violated Business and Professions Code section 6068 and former rule 5-101, but that the violations were not wilful or intentional and no pecuniary loss had resulted from the misconduct.[6]

The hearing panel recommended that petitioner be privately reproved. The hearing panel also recommended that petitioner not be required to take and pass the Professional Responsibility Examination.

A State Bar examiner then requested review by the review department. The hearing was held in January 1989. On March 4, 1989, the review department filed its nine-to-seven decision, which adopted the findings of fact and conclusions of law reached by the hearing panel with one modification. The majority of the review department's referees found that the errors in petitioner's loan application were intentionally made with the intent to deceive Pacific Federal. Based upon this finding, the review

---

[6] Again, one referee dissented on the grounds that there was insufficient evidence that petitioner had committed a culpable offense.

department increased the discipline recommended from a private reproval to a two-year suspension, conditioned upon ninety days' actual suspension, two years' probation, compliance with rule 955 of the California Rules of Court and the requirement that petitioner take and pass the Professional Responsibility Examination. The review department's reason for recommending greater discipline was that the harsher discipline was "necessary to protect the public" in light of the review department's additional finding regarding petitioner's intentional dishonesty and wilful violation of former rule 5-101. The seven-member minority dissented on the grounds that the record did not support a finding that petitioner made wilful misrepresentations on the loan application and that the degree of discipline recommended by the majority was therefore excessive.

## II. DISCUSSION

We note at the outset that while we give great weight to both the review department's disciplinary recommendation (*In re Severo* (1986) 41 Cal.3d 493, 500 [224 Cal.Rptr. 106, 714 P.2d 1244]) and the hearing panel's factual findings (*In re Kreamer* (1975) 14 Cal.3d 524, 532, fn. 5 [121 Cal.Rptr. 600, 535 P.2d 728]), it is this court's duty to independently examine the record, examine the evidence and pass on its sufficiency. (*Emslie* v. *State Bar* (1974) 11 Cal.3d 210, 220 [113 Cal.Rptr. 175, 520 P.2d 991]; *Greenbaum* v. *State Bar* (1987) 43 Cal.3d 543, 550 [237 Cal.Rptr. 168, 736 P.2d 754]; *In re Chira* (1986) 42 Cal.3d 904, 909 [231 Cal.Rptr. 560, 727 P.2d 753].) Independent review of the record is particularly appropriate when, as here, the review department and the hearing panel have disagreed, and the review department itself is divided. (*Ridge* v. *State Bar* (1989) 47 Cal.3d 952 [254 Cal.Rptr. 803, 766 P.2d 569].)

There is no fixed formula guiding our determination of the appropriate discipline. (*Alberton* v. *State Bar* (1984) 37 Cal.3d 1, 14 [206 Cal.Rptr. 373, 686 P.2d 1177].) "Our principal concern is always the protection of the public, the preservation of confidence in the legal profession, and the maintenance of the highest possible professional standard for attorneys." (*Chefsky* v. *State Bar* (1984) 36 Cal.3d 116, 132 [202 Cal.Rptr. 349, 680 P.2d 82], quotations and citation omitted.)

On matters of credibility, we are reluctant to reverse the decision of the hearing panel, which had the opportunity to evaluate conflicting statements after observing the demeanor of the witnesses and the character of their testimony. (*Chefsky* v. *State Bar, supra*, 36 Cal.3d at p. 121.) It is petitioner, however, who bears the burden of showing that the review department's findings are not supported by the record (*Smith* v. *State Bar* (1985) 38 Cal.3d 525, 538-539 [213 Cal.Rptr. 236, 698 P.2d 139]), or that

the review department's recommendation is erroneous or unlawful (Bus. & Prof. Code, § 6083, subd. (c); *Trousil v. State Bar* (1985) 38 Cal.3d 337, 341 [211 Cal.Rptr. 525, 695 P.2d 1066].)

A. *Misrepresentations on the Loan Application*

■ Petitioner contends that the evidence does not support the review department's finding that he acted with the intent to deceive Pacific Federal. We conclude that his contention is well taken.

As we have seen, the only evidence presented on this issue was (1) the loan application itself, (2) petitioner's testimony before the panel, and (3) the testimony of a Pacific Federal employee who was not involved in the transaction. Although petitioner admitted that several statements on the loan application were untrue, he testified that the application was prepared by his partner and that he carelessly did not read the application before signing it, explaining that he did not intend to mislead the loan company and thought that his own credit rating would enable him to secure the loan without any falsification.

The hearing panel apparently found petitioner credible, finding that he did not wilfully mislead Pacific Federal and did not commit an act of moral turpitude. Although the hearing panel was not compelled to credit petitioner's testimony, on the present record there appears to be no basis for the review department—which had not observed petitioner's demeanor while testifying—to overturn the hearing panel's determination on credibility.

Accordingly, we find merit in petitioner's contention that the evidence does not support the review department's finding that petitioner acted with the intent to deceive Pacific Federal.

B. *Conflict of Interest*

Former rule 5-101 provided: "A member of the State Bar shall not enter into a business transaction with a client or knowingly acquire an ownership . . . or other pecuniary interest adverse to a client unless (1) the transaction and terms in which the member of the State Bar acquires the interest are fair and reasonable to the client and are fully disclosed and transmitted in writing to the client in manner and terms which should have reasonably been understood by the client, (2) the client is given a reasonable opportunity to seek the advice of independent counsel of the client's choice on the transaction, and (3) the client consents in writing thereto."

■ Both the hearing panel and the review department found that petitioner violated former rule 5-101 by failing to provide Chambers with a

separate written explanation regarding the possible ramifications of the business transaction between them. Petitioner also testified that he did not at any time advise Chambers to seek the advice of an attorney other than Rego.

Petitioner contends that former rule 5-101 is inapplicable because the agreement was not adverse to Chambers and was entered into to aid Chambers in keeping his property by avoiding foreclosure. This argument is meritless. We have said that an attorney who obtains an interest in the property of a client, where it is reasonably foreseeable that his acquisition may become detrimental to the client, even though his intention is to aid the client, has acquired an interest adverse to the client. (*Ames* v. *State Bar* (1973) 8 Cal.3d 910, 920 [106 Cal.Rptr. 489, 506 P.2d 625] [under former rule 4].)

In *Ames* v. *State Bar, supra*, 8 Cal.3d 910, while representing holders of a junior encumbrance on realty involved in litigation, attorneys, pursuant to agreements with the clients, purchased the senior encumbrance and note for the apparent purpose of affording the clients more time to raise funds to protect the clients' interest against a threatened foreclosure of the senior encumbrance. The agreements entitled the clients to purchase the note and senior encumbrance from the attorneys within a reasonable time. The clients, however, were unable to raise the necessary funds and, in a sale under the senior encumbrance, the attorneys purchased the realty. In disciplinary proceedings, the State Bar concluded that the attorneys had violated former rule 4,[7] prohibiting an attorney from acquiring an interest adverse to his client, and, thereupon, resolved that each attorney "hereby is privately reproved."

In holding that private reproval was the proper discipline under the circumstances, we rejected the contention that actual injury to the client is an element of a violation of the rule. We declared that it would be inconsistent with the purposes of the Rules of Professional Conduct to hold that the client's consent or the fairness of the attorney-client transaction rendered former rule 4 inoperative. Accordingly, we found the attorneys had violated the rule. (*Ames* v. *State Bar, supra*, 8 Cal.3d 910.)

In *Hawk* v. *State Bar* (1988) 45 Cal.3d 589, 600 [247 Cal.Rptr. 599, 754 P.2d 1096], the review department found that Hawk violated former rule 5-101. The review department also concluded that the attorney had committed an act involving moral turpitude and dishonesty in violation of Business and Professions Code section 6106. The proceedings arose out of the attor-

---

[7]Former rule 4 provided: "A member of the State Bar shall not acquire an interest adverse to a client."

ney's taking of a promissory note secured by a deed of trust on real property to secure payment of a fee. The clients were unable to sell the property to pay the fee, and the note was eventually assigned to a third party, who foreclosed.

We held that an attorney who secures payment of fees by acquiring a note secured by a deed of trust in the client's property has acquired an interest adverse to the client, and so must comply with the requirements of former rule 5-101. We also held that acquiring the ability to extinguish summarily the client's interest in the property is what makes the acquisition adverse.

In the present case, petitioner entered into an agreement with his client whereby he took full title to his client's property. Although the purpose of the agreement was to assist Chambers in avoiding foreclosure, the result was that petitioner extinguished his client's interest in the property. Under the rule we have stated, petitioner's acquired interest in the Lake Arrowhead property was adverse to Chambers, and petitioner was obligated to comply with former rule 5-101.

Petitioner also contends that he satisfied his obligation to advise his client to seek the advice of independent counsel when he referred Chambers to his partner, Rego, at the time Chambers initially approached him concerning the foreclosure matter. We have held that "[w]hen an attorney enters into business dealings with a client, 'it is incumbent upon the attorney entering into such transactions to advise the client to seek independent counsel . . . [and] failure to do so constitutes a violation of [former] rule 5-101.'" (*Rose v. State Bar* (1989) 49 Cal.3d 646, 663 [262 Cal.Rptr. 702, 779 P.2d 761]; *Ritter v. State Bar* (1985) 40 Cal.3d 595, 602 [221 Cal.Rptr. 134, 709 P.2d 1303].) Petitioner's claim, that his reasonable belief that Chambers had "other counsel" relieved him of his duty to advise Chambers to seek independent advice, is without merit. The "other counsel" here was petitioner's law partner, who stood to profit from petitioner's and Chambers's participation in the transaction she designed. It would be a departure from the letter and the spirit of former rule 5-101 if we were to find that Rego qualified as the "independent counsel" required by the rule. Although we have not previously addressed the degree of "independence" counsel must have to comply with former rule 5-101, on the facts of this case the answer is clear. The purported "independent" counsel here was petitioner's only law partner and girlfriend. She was to receive $5,000 in legal fees if the loan scheme was successful. Under these circumstances, Rego could not possibly serve as the "independent counsel" former rule 5-101 contemplates a client should consult to receive objective, impartial advice concerning a prospective business deal with his or her attorney.

We conclude, as a general rule, that a member, associate, or partner of a law firm cannot serve as the "independent counsel" required by former rule 5-101.

## C. *Degree of Discipline*

■ We again note that "The imposition of penalty does not issue from a fixed formula but from a balanced consideration of the relevant factors." (*Bernstein* v. *State Bar* (1972) 6 Cal.3d 909, 919 [101 Cal.Rptr. 369, 495 P.2d 1289].) "In deciding what discipline is warranted, each case must be decided on its own facts." (*Alberton* v. *State Bar, supra*, 37 Cal.3d 1, 14.)

Violations of former rule 5-101 and former rule 4 have resulted in discipline ranging from private reproval (*Ames* v. *State Bar, supra*, 8 Cal.3d 910), to two years' actual suspension (*Krieger* v. *State Bar* (1954) 43 Cal.2d 604 [275 P.2d 459]; *Beery* v. *State Bar* (1987) 43 Cal.3d 802 [239 Cal.Rptr. 121, 739 P.2d 1289]). (See also *Lewis* v. *State Bar* (1981) 28 Cal.3d 683 [170 Cal.Rptr. 634, 621 P.2d 258] [thirty-day suspension stayed, one-year probation]; *Giovanazzi* v. *State Bar* (1980) 28 Cal.3d 465 [169 Cal.Rptr. 581, 619 P.2d 1005] [three-year suspension stayed, three-year probation, thirty days' actual suspension]; *Ritter* v. *State Bar, supra*, 40 Cal.3d 595 [one-year suspension stayed, two-year probation, sixty days' actual suspension]; *Wallis* v. *State Bar* (1942) 21 Cal.2d 322 [131 P.2d 531] [charges dismissed].)

■ Though neither the hearing panel nor the review department addressed the factors in mitigation, we briefly do so here. At the time the incident occurred, petitioner had practiced law for 16 years. He had no prior disciplinary record. "Absence of a prior disciplinary record is an important mitigating circumstance when an attorney has practiced for a significant period of time." (*In re Young* (1989) 49 Cal.3d 257, 269 [261 Cal.Rptr. 59, 776 P.2d 1021]; *Chefsky* v. *State Bar, supra*, 36 Cal.3d 116, 132, fn. 10.)

This disciplinary proceeding arises out of one isolated incident in petitioner's twenty-four-year legal career. It appears to have been aberrant behavior on his part and certainly not typical of his performance during his career both before and after this incident.

The review department concluded that the increased discipline was warranted because it found that petitioner was intentionally dishonest in connection with the loan application and wilfully violated former rule 5-101. Because we find that petitioner did violate former rule 5-101, but did not make wilful misrepresentations on the loan application, we conclude that the recommended discipline is excessive.

Although we conclude that petitioner violated former rule 5-101 by acquiring an interest adverse to his client, we are mindful of the factors that the transaction involved was engaged in with the consent of the client, who was an experienced real estate agent, and that, as the hearing panel found, petitioner "[was] acting in what [he] thought were the best interests of [his] client and had no intent to deceive, defraud or otherwise oppress [his] client." (See *Eschwig* v. *State Bar* (1969) 1 Cal.3d 8 [81 Cal.Rptr. 352, 459 P.2d 904, 35 A.L.R.3d 662].) Nevertheless, mitigating factors cannot wholly dissolve the violation of the rule that proscribes such conduct even when engaged in under such circumstances, because of its potential risk of harm to clients and its erosion of the highest standards of loyalty demanded of members of the bar. The discipline imposed must recognize not only the underlying violation of former rule 5-101, but also the mitigating circumstances in which the violation occurred.

Accordingly, it is ordered that petitioner Thomas J. Connor be subject to public reproval. This order is effective upon finality of this decision in this court. (See Cal. Rules of Court, rule 24(a).)

**LUCAS, C. J.,** Dissenting.—Because I am unconvinced the evidence is insufficient to establish petitioner's intent to deceive, I dissent. I would adhere to the finding and recommendation of the review department, and impose 90 days' actual suspension.